**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | |
|---|---|
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PAULINE MAGIN, on behalf of all ) | |
| Wrongful Death Beneficiaries for the death of ) | |
| KIM HOLSAPPLE, deceased; ) | |
| ) | |
| ANGELIKA SALAZAR, individually, and ) | |
| As Next Friend of N.N., a minor; ) | |
| ) | |
| N.N., a minor, by and ) | |
| Through his Next Friend, Angelika Salazar; ) | CASE NO. |
| ) | |
| TIFFANY POWERS and ) | **COMPLAINT TO** |
| PAULINE MAGIN, on behalf of all ) | **COMPEL ARBITRATION** |
| Wrongful Death Beneficiaries for the death of ) | |
| RACHELLE COOK, deceased; ) | |
| ) | |
| TIFFANY POWERS, individually, ) | |
| PAULINE MAGIN, individually, ) | |
| BRENT POWERS, individually, and ) | |
| WILLIAM MAGIN, individually; ) | |
| ) | |
| SHAUN PHAN and ) | |
| VUI NGUYEN, on behalf of all ) | |
| Wrongful Death Beneficiaries for the death of ) | |
| BINH PHAN, deceased; ) | |
| ) | |
| SHAUN PHAN, individually, and ) | |
| As Next Friend of A.P., a minor; ) | |
| ) | |
| A.P., a minor, by and ) | |
| Through her Next Friend, Shaun Phan; ) | |
| ) | |
| VUI NGUYEN, individually, ) | |
| NGOC PHAM, individually, ) | |
| DUNG PHAM, individually, ) | |
| NGOAN PHAM, individually, ) | |
| VY PHAM, individually, and ) | |

{00223782.DOCX}

| | |
|---|---|
| THANH LE, individually; | ) |
| | ) |
| THINH MAI, individually, and | ) |
| As Next Friend of A.M. and | ) |
| A.M., minors  ; | ) |
| | ) |
| A.M., a minor, by and | ) |
| Through her Next Friend, Thinh Mai; | ) |
| | ) |
| and | ) |
| | ) |
| A.M., a minor, by and | ) |
| Through her Next Friend, Thinh Mai; | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT TO COMPEL ARBITRATION

Plaintiff BNSF Railway Company ("BNSF") for its Complaint to Compel Arbitration against Defendants states as follows:

## NATURE OF THE ACTION

1.  This is an action for relief under the Federal Arbitration Act, 9 U.S.C. § 4, arising out of Defendants' refusal to comply with the terms of a pre-dispute arbitration agreement binding upon the parties in connection with Defendants' claims against Plaintiff.  BNSF seeks an Order from this Court compelling arbitration of Defendants' claims, staying the pending Missouri state court actions Defendants have filed against BNSF and enjoining Defendants from pursuing the state court actions against Plaintiff while the parties arbitrate their claims.

## JURISDICTION AND VENUE

2.  This Court has original jurisdiction arising under 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and Defendants, and, upon information and belief, the amount in controversy exceeds $75,000.  Jurisdiction of this Court is further invoked under 9 U.S.C. § 4.

3.     BNSF Railway Company is a Delaware corporation with its principal place of business in the state of Texas.

4.     Decedents Kim Holsapple and Rachelle Cook were residents of Kansas.

5.     Pauline Magin is the mother of Kim Holsapple and Rachelle Cook, which makes her a Class I beneficiary for the death of both women under Missouri's wrongful death statute, R.S.Mo. § 537.080. William Magin is Pauline Magin's husband. The Magins are residents of Kansas.

6.     Tiffany Powers is the daughter of Rachelle Cook, which makes her a Class I beneficiary for the death of Ms. Cook under Missouri's wrongful death statute, R.S.Mo. § 537.080. Brent Powers is Tiffany Powers' husband. The Powers' are residents of Kansas.

7.     Upon information and belief, Angelika Salazar is a resident of California who has relocated to Missouri and intends to remain in Missouri. Upon information and belief, N.N., a minor, resides with his mother, Ms. Salazar.

8.     Decedent Binh Phan was a resident of Missouri.

9.     Vui Nguyen is the wife of Binh Phan, which makes her a Class I beneficiary for his death under Missouri's wrongful death statute, R.S.Mo. § 537.080. Ms. Nguyen is a resident of Missouri.

10.    Shaun Phan is the son of Binh Phan, which makes him a Class I beneficiary for the death of Binh Phan under Missouri's wrongful death statute, R.S.Mo. § 537.080. Shaun Phan is a resident of Missouri. A.P., a minor, resides with her father, Shaun Phan.

11.    Ngoc Pham, Dung Pham, Ngoan Pham, and Vy Pham are all residents of Missouri.

12.    Thanh Le is a resident of Missouri.

{00223782.DOCX}

3

13. Thinh Mai is a resident of Missouri. Adalyn Mai and Aden Mai, minors, reside with their father, Thinh Mai.

14. In the personal injury claims, Defendants Angelika Salazar, N.N., Tiffany Powers, Pauline Magin, Shaun Phan, A.P., Vui Nguyen, Ngoc Pham, Dung Pham, Ngoan Pham, Vy Pham, Thinh Mai, A.M., A.M., and Thanh Le each claim similar damages for such injuries as both past and ongoing "physical pain and emotional distress, medical expenses, economic damages and non-economic damages." Ex. 1, First Amended Petition in the Circuit Court of Chariton County, Missouri case of *Shaun Phan, et al. v. BNSF Railway Company, et al.*, Case No.: 22CH-CC00022; Ex. 2, First Amended Petition in the Circuit Court of Chariton County, Missouri case of *Nick Cook, et al. v. BNSF Railway Company, et al.*, Case No. 22CH-CC00021; Ex. 3, First Amended Petition in the Circuit Court of Chariton County, Missouri case of *Daniel Holsapple, et al. v. BNSF Railway Company, et al.,* Case No.: 22CH-CC00024. The husbands of Pauline Magin and Tiffany Powers also claim damages for the "loss of affection, care, companionship, and services" of their wives. Ex. 2 at Count III.

15. This Court has personal jurisdiction over the Missouri resident Defendants by virtue of their residency and personal jurisdiction over the Kansas resident Respondents because they consented as plaintiffs in their underlying State Court Actions.

16. Venue is proper under 28 U.S.C. § 1391, in that a substantial part of the events giving rise to Defendants' underlying State Court Actions occurred in this district.

## FACTUAL ALLEGATIONS

17. Defendants' claims arise out of an incident that occurred on June 27, 2022, while Kim Holsapple, Angelika Salazar, N.N., Rachelle Cook, Tiffany Powers, Pauline Magin, Binh Phan, Shaun Phan, A.P, Vui Nguyen, Ngoc Pham, Dung Pham, Ngoan Pham, Vy Pham, Thanh

{00223782.DOCX}

Le, Thinh Mai, A.M., and A.M. were traveling as passengers on National Railroad Passenger Corporation ("Amtrak") Train 4, also known as the Southwest Chief.

18. Train 4 was traveling from Los Angeles to Chicago when it struck a dump truck negligently and recklessly operated by an employee of M.S. Contracting, LLC at U.S. Department of Transportation Crossing No. 005284Y near Mendon, Missouri. The collision with the dump truck caused Train 4 to derail allegedly resulting in injuries to Defendants and Defendants' decedents.

19. To purchase a ticket from Amtrak, whether on the website, mobile website, or app, customers must first affirmatively accept Amtrak's Terms and Conditions, which include a mutual agreement to arbitrate any claims between the customer and Amtrak ("Arbitration Agreement").

20. When making an online ticket purchase through Amtrak's website, before they can complete their purchase, passengers must click a box acknowledging that they "have read and agree[d] to the terms and conditions, including the binding arbitration agreement…" An exemplar is below:



21. This provision also contains a link directly to the Terms and Conditions which may be found at https://www.amtrak.com/terms-and-conditions.html

22. A true and correct copy of Version 2.9.15 of the Terms and Conditions is attached hereto as Exhibit 4, and a true and correct copy of Version 2.9.16 of the Terms and Conditions is attached hereto as Exhibit 5.

23. At the very top of those Terms and Conditions is a notice that states:

> "These terms and conditions contain a binding Arbitration Agreement below. Please read the Arbitration Agreement carefully because it applies mutually to You and Amtrak and requires that you resolve claims and disputes with Amtrak on an individual basis through arbitration and not by way of court or jury trial. By purchasing a ticket for travel on Amtrak, You are agreeing to these terms and conditions and agreeing to the Arbitration Agreement."

Exhibit 4, p. 1, Exhibit 5, p. 1.

24. The Arbitration Agreement states:

"Mutual Agreement to Arbitrate ("Arbitration Agreement"). This Arbitration Agreement is intended to be as broad as legally permissible, and, except as it otherwise provides, applies to **all claims**, disputes, or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration. Amtrak and Customer (**on behalf of yourself and any individuals for whom you purchase tickets, including, without limitation, family members, minor passengers, colleagues and companions** (collectively "You" or "Your"), **AGREE that this Arbitration Agreement applies, without limitation, to claims Amtrak may have against You and claims You may have against Amtrak and any affiliates or related entities, or against any party to which Amtrak owes indemnity (which party may also enforce this Agreement), including without limitation any host railroad, based upon or related to:** these Terms and Conditions, breach of contract, **tort claims, common law claims,** Your relationship with Amtrak, tickets, services and accommodations provided by Amtrak, carriage on Amtrak trains and equipment, **any personal injuries (including, but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages arising out of or related to any personal injury),** and any claims for discrimination and failure to accommodate, which shall be decided by a single arbitrator through binding arbitration and not by a judge or jury."

Exhibit 4, pp. 57-61, Exhibit 5, pp. 58-61. (emphasis added)

25. The Arbitration Agreement also correctly notes that it "is governed by the Federal Arbitration Act ('FAA') and evidences a transaction involving commerce." *See* 9 U.S.C. § 1 ("'Commerce,' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation…"); *see also* 9

{00223782.DOCX}

6

U.S.C. § 2 ("A written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract…shall be valid, irrevocable, and enforceable…").  Id.

26. The Arbitration Agreement permits "any party to which Amtrak owes indemnity…including without limitation any host railroad" to enforce its terms.  The Arbitration Agreement states: "[T]his Arbitration Agreement applies, without limitation, to claims Amtrak may have against You and claims You may have against Amtrak and any affiliates or related entities, or **against any party to which Amtrak owes indemnity (which party may also enforce this Agreement), including without limitation any host railroad** . . ."  Id. (emphasis added)

26. BNSF is a host railroad to which Amtrak owes indemnity, and, therefore, BNSF is expressly entitled to enforce the Arbitration Agreement.

27. Customers cannot complete their ticket purchase until the box signaling agreement to the Terms and Conditions including the binding arbitration agreement is checked.

28. On May 5, 2022, Passenger Kim Holsapple purchased tickets for herself, Rochelle Cook, Pauline Magin and Tiffany Powers for travel on Amtrak Train 4 departing June 27, 2022.

29. In purchasing these tickets for travel on behalf of herself and passengers Rochelle Cook, Pauline Magin and Tiffany Powers, Kim Holsapple affirmatively clicked the box stating that she had read and understood the Terms and Conditions on May 5, 2022.

30. Upon information and belief, Ms. Holsapple was located in Kansas when she made her ticket purchases. She utilized a billing address located in Kansas and directed that the tickets be sent to email addresses belonging to her and Rachelle Cook.

31. Upon information and belief, Ms. Cook, Ms. Magin, and Ms. Powers authorized

Ms. Holsapple to purchase tickets on their behalf.

32. On June 27, 2022, Ms. Holsapple, Ms. Cook, Ms. Magin, and Ms. Powers boarded Train 4 at Union Station in Kansas City, Missouri and were travelling on Train 4 at the time of the incident.

33. On May 26, 2022, Ngoc Pham purchased tickets for passengers Binh Phan and Vui Nguyen on Amtrak Train 4 departing June 27, 2022.

34. In purchasing these tickets for travel on behalf of passengers Binh Phan and Vui Nguyen, Ngoc Pham affirmatively clicked the box stating that Pham read and understood the Terms and Conditions on May 26, 2022.

35. Upon information and belief, Mr. Phan and Ms. Nguyen authorized Ngoc Pham to purchase tickets on their behalf.

36. On June 27, 2022, Mr. Phan and Ms. Nguyen boarded Train 4 at Union Station in Kansas City, Missouri and were travelling on Train 4 at the time of the incident.

37. On May 26, 2022, Passenger Ngoc Pham purchased tickets for himself/herself, as well as passengers for Shaun Phan, Andrea Phan, Vy Pham, Dung Pham, Ngoan Pham, Thinh Mai, A.M., and A.M. on Amtrak Train 4 departing June 27, 2022.

38. In purchasing these tickets for travel for himself/herself, as well as passengers for Shaun Phan, Andrea Phan, Vy Pham, Dung Pham, Ngoan Pham, Thinh Mai, A.M., and A.M,, Ngoc Pham affirmatively clicked the box stating that Pham read and understood the Terms and Conditions, on May 26, 2022.

39. Upon information and belief, Ngoc Pham was located in Missouri when she made the ticket purchases for himself/herself, as well as passengers for Shaun Phan, Andrea Phan, Vy Pham, Dung Pham, Ngoan Pham, Thinh Mai, A.M., and A.M. She utilized a billing address

located in Missouri and directed that the tickets be sent to email addresses belonging to herself, Shaun Phan, and Vy Pham.

40. Upon information and belief, Shaun Phan, Andrea Phan, Vy Pham, Dung Pham, Ngoan Pham, Thinh Mai, A.M., and A.M. authorized Ngoc Pham to purchase tickets on their behalf.

41. On June 27, 2022, Ngoc Pham, Shaun Phan, Andrea Phan, Vy Pham, Dung Pham, Ngoan Pham, Thinh Mai, A.M., and A.M. boarded Train 4 at Union Station in Kansas City, Missouri and were travelling on Train 4 at the time of the incident.

42. On June 5, 2022, Ngoc Pham purchased a ticket for passenger Thanh Le on Amtrak Train 4 departing June 27, 2022.

43. In purchasing the ticket for travel of Thanh Le, Ngoc Pham affirmatively clicked the box stating that Pham read and understood the Terms and Conditions on June 5, 2022.

44. Upon information and belief, Ngoc Pham was located in Missouri when she made the ticket purchases for Thanh Le. She utilized a billing address located in Missouri and directed that the ticket to be sent to an email address belonging to herself.

45. Upon information and belief, Thanh Le authorized Ngoc Pham to purchase the tickets for her.

46. On June 27, 2022, Thanh Le boarded Train 4 at Union Station in Kansas City, Missouri and was travelling on Train 4 at the time of the incident.

47. On June 17, 2022, Angelika Salazar purchased tickets herself and passenger N. N. on Amtrak Train 4 departing June 27, 2022.

48.     In purchasing these tickets for travel for herself and N.N., Angelika Salazar affirmatively clicked the box stating that she read and understood the Terms and Conditions on June 17, 2022.

49.     Upon information and belief, Ms. Salazar was located in California when she made her ticket purchase. She utilized a billing address located in California and directed that the tickets be sent to an email address belonging to her.

50.     On June 25, 2022, Ms. Salazar and N.N. boarded Train 4 at an Amtrak station in San Bernardino, California and were travelling on Train 4 at the time of the incident.

51.     In contravention of the terms and conditions acknowledged and agreed to by and on behalf of Defendants, Defendants filed state court actions against BNSF.  See Ex. 1, First Amended Petition in the Circuit Court of Chariton County, Missouri case of *Shaun Phan, et al. v. BNSF Railway Company, et al.*, Case No.: 22CH-CC00022; Ex. 2, First Amended Petition in the Circuit Court of Chariton County, Missouri case of *Nick Cook, et al. v. BNSF Railway Company, et al.*, Case No. 22CH-CC00021; Ex. 3, First Amended Petition in the Circuit Court of Chariton County, Missouri case of *Daniel Holsapple, et al. v. BNSF Railway Company, et al.,* Case No.: 22CH-CC00024.

52.     Defendants have refused to arbitrate their claims in accordance with the parties' Arbitration Agreement.

## COUNT I
**Petition to Compel Arbitration Pursuant to 9 U.S.C. § 4.**

53.     Plaintiff incorporates the allegations set forth in Paragraphs 1-52 above as if fully set forth here.

54.     The parties' Arbitration Agreement involves interstate commerce and states that it is governed by the Federal Arbitration Act.

55. The parties' Arbitration Agreement is valid, irrevocable, and enforceable under the Federal Arbitration Act, 9 U.S.C. § 2.

56. Plaintiff is aggrieved by Defendants' refusal to arbitrate.

57. Plaintiff is entitled to an Order directing the parties to arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.

58. Service of this Complaint serves as the notice to Defendants that Plaintiff is petitioning the Court for such an Order. No sooner than five days after service of this Complaint, Plaintiff prays for a hearing to determine the matter.

59. Plaintiff prays for an Order directing Defendants to arbitrate all their claims as set forth in their state court actions in accordance with the terms of the parties' Arbitration Agreement.

## COUNT II
### Petition to Stay State Court Actions Pursuant to 9 U.S.C. § 3

60. BNSF incorporates the allegations set forth in Paragraphs 1-59 above as if fully set forth here.

61. The claims Defendant brings in his lawsuit pending in the State Court Actions are all referable to arbitration under the parties' Arbitration Agreement.

62. A stay of the State Court Actions is necessary to effectuate an Order from this Court compelling arbitration.

63. Pursuant to Section 3 of the Federal Arbitration Act, Plaintiff prays for an Order staying proceedings in the State Court Actions until the parties have arbitrated Defendant's claims therein.

## COUNT III
### Petition for Preliminary Injunction Pending Arbitration

64. BNSF incorporates the allegations set forth in Paragraphs 1-63 above as if fully set forth here.

65. An order prohibiting Defendants from litigating their claims in the State Court Action is necessary to effectuate this Court's Order compelling the parties to arbitration.

66. Without an injunction, BNSF will be irreparably harmed. Despite the parties' valid and enforceable Arbitration Agreement, BNSF will be subjected to the burdens and costs of civil litigation which are not applicable to arbitration proceedings and for which BNSF will have no remedy.

67. There is a substantial likelihood that BNSF will prevail on the merits of this action, because the parties' Arbitration Agreement is valid and enforceable pursuant to the Federal Arbitration Act.

68. There is little likelihood of harm to Defendants should a preliminary injunction issue. Defendants will be able to pursue any available remedies for their claims through arbitration, pursuant to the terms of the Arbitration Agreement.

69. The public interest would be served in granting a preliminary injunction because it will promote the rapid and unobstructed enforcement of an agreement willingly entered into between parties, would prevent unnecessary waste of judicial resources, and would allow Defendants to promptly pursue their claims in arbitration.

70. Plaintiff BNSF prays for a preliminary injunction prohibiting Defendants from pursuing the State Court Actions while the parties arbitrate their claims.

WHEREFORE, Plaintiff prays the Court grant the following relief:  For a hearing on this matter; for an Order compelling the arbitration of all of Defendants' claims arising out of or

relating to the State Court Actions; for an Order staying the State Court Actions until the parties have completed arbitration; for an injunction prohibiting Defendants from pursuing the State Court Actions while the parties arbitrate; and for such other relief as the Court deems just and proper.

Respectfully submitted,

 /s/ Sean P. Hamer
Sean P. Hamer        MO # 48153
Scott R. Ast         MO # 51699
Paula Brown          MO # 45870
Kelly L. Murphy      MO # 72573
Alex A. McKenna      MO # 72024
SCHARNHORST AST KENNARD GRIFFIN, P.C.
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
T: (816) 268-9400/F: (816) 268-9409
Email: shamer@sakg.com
       sast@sakg.com
       pbrown@sakg.com
       kmurphy@sakg.com
       amckenna@sakg.com

Mark S. Landman  (*Pro Hac Vice Pending*)
LANDMAN CORSI BALLAINE & FORD, P.C.
120 Broadway, 13th Floor
New York, New York 10271
T: (212) 238-4800/F: (212) 238-4848
Email: mlandman@lcbf.com

John A. Bonventre (*Pro Hac Vice Pending*)
LANDMAN CORSI BALLAINE & FORD, P.C.
One Gateway Center, 22nd Floor
Newark, NJ 07102
T: (973) 623-2700/F: (973) 623-4496
Email:  jbonventre@lcbf.com

*Attorneys for Defendants BNSF Railway Company*