**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-CV-00068-RLW |
| v. | ) | |
| | ) | |
| PAULINE MAGIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**BNSF RAILWAY COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS
FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT**

For centuries, parties have been defending breach-of-contract suits with post-hoc arguments that they did not understand what they signed. *See, e.g., Snider v. Adams Express Co.*, 63 Mo. 376, 383 (1876). But the law resolutely rejects this. *Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543, 553 (Mo. App. W.D. 2017) ("Missouri law presumes that a party had knowledge of the contract he or she signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing."). At least one Missouri Appellate Court has referred to a party's reliance on this argument "as something of a buzzer shot from half-court." *Taylor & Martin, Inc. v. Hiland Dairy, Inc.*, 676 S.W.2d 859, 871 (Mo. App. S.D. 1984).

This Court's mandate is clear: "a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713 (2022). Accordingly, the Court should see the Signatory Passengers' Response for what it is – an air-balled half-court heave, and the Court should grant BNSF's motion (Doc. 77), compel the Signatory Passengers to arbitration, and enjoin them from pursuing their state court actions.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………………………………………ii

TABLE OF AUTHORITIES……………………………………………………………………..iii

    A.  Summary judgment is not a "harsh remedy" in this type of action; rather, it is a constructive tool to efficiently determine the litigation forum for these parties…………..1

    B.  No genuine issues of material fact are present – and the Signatory Passengers have not identified any discovery that should be conducted to clarify any factual issues – so summary judgment is appropriate……..…………………………………………………..2

    C.  The Signatory Passengers' claims that BNSF has waived arbitration are meritless………5

        i.  BNSF's briefing on MS Contracting's motions to join Amtrak did not waive arbitration….…………………………………………………………………8

        ii.  Seeking a stay is the opposite of "engaging litigation machinery"………...............9

        iii.  BNSF has been consistent in asserting its right to arbitration throughout state court hearings and pleadings..……………………………………………………11

        iv.  The passengers never accepted BNSF's offer to waive arbitration, and the offer itself is not sufficient to constitute waiver………………………………………15

    D.  The Signatory Passengers' constitutional arguments are unavailing………………...…16

        i.  The constitutional rights cited by the Signatory Passengers are inapplicable to the Signatory Passengers' state court actions.………………………………………16

        ii.  Amtrak is not acting as "the government" when it enters into private contracts with its customers.………...….................................................................................17

        iii.  Even if Amtrak was "the government," government arbitration does not actually pose a constitutional issue……………………………………………………20

    E.  BNSF is an intended third-party beneficiary in the identifiable class of "host railroads" to whom Amtrak owes indemnity.………….........................................................................20

## **TABLE OF AUTHORITIES**

**CASES**

U.S. SUPREME COURT

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995)…………………………………..…2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………………………3

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)……………...……………………...2

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)...……………………….2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)………………………………………………1

*Department of Transp. v. Association of American R.R.'s*, 575 U.S. 43 (2015)……………..17-19

*Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*, 284 U.S. 151 (1931)………..16-17

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246 (2017)………………………………..5

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)..………………………………17-19

*Minneapolis & St. L.R. Co. v. Bombolis*, 241 U.S. 211 (1916)…………………………………16

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)....………………1

EIGHTH CIRCUIT

*Barker v. Golf U.S.A., Inc.*, 154 F.3d 788 (8th Cir. 1998)…………………………………………10

*Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085 (8th Cir. 2007) ...……………………..10

*Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 373 F.2d 136 (8th Cir. 1967) …………………2

*Stifel, Nicolaus & Co., Inc. v. Freeman*, 924 F.2d 157 (8th Cir. 1991)…………………………11

*Union Pacific Railroad Co. v. Surface Transportation Board*, 863 F.3d 816 (8th Cir. 2017)…..18

E.D. MO.

*O'Brien v. Murphy*, 2022 WL 4598559 (E.D. Mo. Sept. 30, 2022)..……………………………..4

*Spiller v. Paul Mitchell School of St. Louis*, 2022 WL 3348518 (E.D. Mo. Aug. 12, 2022)..…..2-3

FIRST CIRCUIT

*Montilla v. Federal National Mortgage Association*, 999 F.3d 751 (1st Cir. 2021)……………19

### NINTH CIRCUIT

*United States v. Park Place Assocs., Ltd.*, 563 F.3d 907 (9th Cir. 2009)………………………20

### TENTH CIRCUIT

*Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248 (10th Cir. 2012)...…………………………………1

*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975 (10th Cir. 2014)……………………………1

### OTHER FEDERAL DISTRICTS

*Ass'n of American Railroads v. Dep't of Transp.*, 865 F.Supp.2d 22 (D.D.C. 2012)…………...18

*Bolden v. Amtrak*, 2021 WL 6104827 (C.D. Ill. May 24, 2021)………………………………….2

*Friends for Health: Supporting the North Shore Health Center v. PayPal, Inc.*, 2022 WL 2799396 (N.D. Ill. July 14, 2022)……………………………………………………………...15

### MISSOURI

*Bartleman v. Humphrey*, 441 S.W.2d 335 (Mo. 1969)……………..………………………….....11

*Berhorst v. J.L. Mason of Mo., Inc.*, 764 S.W.2d 659 (Mo. App. E.D. 1988)...…………………11

*Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543 (Mo. App. W.D. 2017)……………i, 3, 22

*Crabby's, Inc. v. Hamilton*, 244 S.W.3d 209 (Mo. App. S.D. 2008)...…………….……………11

*Grossman v. Thoroughbred Ford, Inc.*, 297 S.W.3d 918 (Mo. App. W.D. 2009)....……………3,22

*Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36 (Mo. App. E.D. 1980)……………………………21

*Lovelace Farms, Inc. v. Marshall*, 442 S.W.3d 202 (Mo. App. E.D. 2014)..……………………11

*Saint Luke's Hosp. of Kansas City v. Benefit Mgmt. Consultants, Inc.*, 626 S.W.3d 731 (Mo. App. W.D. 2021)..………………………………………………………………………20-21

*Septagon Constr. Co., Inc.-Columbia v. Indus. Dev. Auth. of City of Moberly*, 521 S.W.3d 616 (Mo. App. W.D. 2017)………………………………………………………………………20-21

*Springleaf Financial Services, Inc. v. Shull*, 500 S.W.3d 276 (Mo. App. S.D. 2016)..…………11

*Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206 (Mo. App. E.D. 1987)……….21

*Woodson v. Bank of America, N.A.*, 602 S.W.3d 316 (Mo. App. E.D. 2020)..………………15-16

**STATUTES AND REGULATIONS**

Administrative Dispute Resolution Act (5 U.S.C. § 575(a))……………………………….....20

Federal Arbitration Act (9 U.S.C. § 1, *et seq.*)....………………………………………………1, 20

**OTHER**

*Constitutional Limitations on Federal Government Participation in Binding Arbitration*, 19 Op. O.L.C. 208 (1995)..…………………………………………………………………………20

Federal Railroad Administration Overview, Highlights and Summary of the Passenger Rail Investment and Improvement Act of 2008 (PRIIA), *Public Law No. 110-432, Division B, enacted Oct. 16, 2008, Amtrak/High-Speed Rail.*.………………………………………17-18

## ARGUMENT

**A.**     **Summary judgment is not a "harsh remedy" in this type of action; rather, it is a constructive tool to efficiently determine the litigation forum for these parties.**

"The object [of a 9 U.S.C. § 4 action] is always to decide quickly – **summarily** – the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, J.) (emphasis added). "Parties should not have to endure years of waiting and exhaust legions of photocopiers in discovery and motions practice merely to learn *where* their dispute will be heard. The [Federal Arbitration] Act requires courts process the venue question quickly so the parties can get on with the merits of their dispute in the right forum…" *Id.* at 978 (emphasis in original) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983) ("FAA requires 'an expeditious and summary hearing, with only restricted inquiry into factual issues.'")). "When it's apparent from a quick look at the case that no material disputes of fact exist, it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Id.* at 978 (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations and citations omitted).

BNSF's First Motion for Partial Summary Judgment is intended to establish the validity, enforceability, and scope of the Arbitration Agreement, as well as be dispositive of the suits as to 8 passengers: Angelika Salazar, Ngoc Pham, Estevan Carreon, Tami Lakey, Kimberly Howard,

{00226590.DOCX}

Noel Lucero, Sherri Schwanz, and Allen Gallaway. These "Signatory Passengers" – with the possible exception of Allen Gallaway – are all similarly situated as individuals who purchased their own tickets and personally clicked the "I Agree" button on Amtrak's Terms and Conditions. Each of the Signatory Passengers also bring similar personal injury claims in their state court actions. This is why it "makes sense" to handle these passengers as a collective group – the same legal questions apply to each, thus this Court's answers to those questions will apply to each.

**B.    No genuine issues of material fact are present – and the Signatory Passengers have not identified any discovery that should be conducted to clarify any factual issues – so summary judgment is appropriate.**

"The Supreme Court has instructed that courts must 'rigorously enforce' arbitration agreements according to their terms, even if there is waiver to the constitutional right to a jury trial." *Spiller v. Paul Mitchell School of St. Louis*, No. 4:22-CV-339 RLW, 2022 WL 3348518, at *4 (E.D. Mo. Aug. 12, 2022) (White, J.) (string-citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995); *Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.*, 373 F.2d 136, 142 (8th Cir. 1967)).

The Signatory Passengers (other than Allen Gallaway) do not dispute that they each clicked the "I Agree" box. At least one federal court, in the context of compelling an Amtrak passenger to arbitration under Amtrak's ticket Terms and Conditions, has found that Amtrak's process "adequately communicate[s] the terms and conditions to [customers] and that [customers] receive[] reasonable notice of those terms before purchasing [their] ticket[s]." *Bolden v. Amtrak*, No. 21-CV-2068, 2021 WL 6104827, at *4 (C.D. Ill. May 24, 2021). The Signatory Passengers make no argument that their personal injury claims are outside the scope of the Arbitration Agreement. Nevertheless, like the plaintiff this Court compelled to arbitration in

{00226590.DOCX}

2

*Spiller* (2022 WL 3348518, at *3), the Signatory Passengers argue they should be afforded the opportunity to engage in discovery. Also like *Spiller*, the Signatory Passengers do not describe what discovery they would take or even what they believe they would uncover through discovery. *Id.* at *3.

No amount of discovery is going to un-click the "I Agree" button. Even the most skilled counsel cannot effectively cross-examine a data server or an authentic document – and the Signatory Passengers make no claim that the Passenger Name Reservation documents are inauthentic. The only substantive responses the Signatory Passengers offer to BNSF's Statement of Material Facts are their own affidavits in which they claim they did not "knowingly agree, voluntarily agree, or intelligently agree to arbitrate any claims against Amtrak or BNSF Railway Company." *See, e.g.*, Doc. 81, Ex. E.

However, those are conclusory statements with no factual support. The Signatory Passengers make no factual allegations that they were tricked or coerced into agreeing to the Terms and Conditions. Without such factual allegations, the Signatory Passengers' conclusory statements – that they did not understand what they agreed to – do not matter. *Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543, 553 (Mo. App. W.D. 2017) ("Missouri law presumes that a party had knowledge of the contract he or she signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing.") (citing *Grossman v. Thoroughbred Ford, Inc.*, 297 S.W.3d 918, 922 (Mo. App. W.D. 2009)).

Thus, the affidavits proffered by the Signatory Passengers do not raise a genuine issue of material fact. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

Solely for the purpose of this motion, BNSF accepts as true Allen Gallaway's assertion that he asked Kimberly Howard to purchase his Amtrak ticket for him and that it was Ms. Howard who clicked the "I Agree" box on Mr. Gallaway's behalf. *See* Doc. 47-2; *see also O'Brien v. Murphy*, No. 1:20-CV-00153-SEP, 2022 WL 4598559, at *1 (E.D. Mo. Sept. 30, 2022) ("For purposes of the summary judgment motion, Defendants have accepted O'Brien's account of certain facts as true to avoid a genuine dispute…but they reserve the right to challenge those facts later at trial."; noting Fed. R. Civ. P. 56 2010 Advisory Committee Notes, Subdivision (g) – "The court must take care that [applying the summary-judgment standard to dispose of material facts not genuinely disputed] does not interfere with a party's ability to accept a fact for purposes of the motion only."). Accordingly, no genuine issue of material fact exists; the only pertinent questions remaining are those of law: (1) whether Mr. Gallaway is bound by the Terms and Conditions as a consequence of his agent accepting them on his behalf; and/or (2) whether "direct benefits estoppel" binds Mr. Gallaway to the terms of the ticket contract since he knowingly accepted that contract when he travelled upon Amtrak Train 4.

Mr. Gallaway's only response to the agency argument offered by BNSF in Doc. 78 is an attempt to gut the entirety of agency jurisprudence. Mr. Gallaway suggests that for Amtrak's Terms and Conditions to work when someone purchases a ticket on behalf of someone else, Amtrak should "ask if the purchaser is authorized to purchase tickets for anyone else and has a power of attorney or other status to waive that person's rights." Doc. 84 at p. 36. Beyond the fact that this suggestion is unrealistic and untenable, if every person must obtain a power of attorney to make a contract on behalf of someone else, then as a practical matter agency law no longer

exists. Further, this proposed requirement – an explicit statement of authority to waive constitutional rights – is exactly what the United States Supreme Court found to be preempted by the Federal Arbitration Act in *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246 (2017) because it disfavors arbitration agreements.

Mr. Gallaway asked Ms. Howard to purchase him a ticket, and Ms. Howard did so. In doing so, Ms. Howard agreed to a contract with plain terms informing her that she was agreeing to binding arbitration on Mr. Gallaway's behalf. The traditional principles of agency under actual and apparent authority apply, and Mr. Gallaway is bound to the Arbitration Agreement.

Mr. Gallaway also offers no response to BNSF's assertion that "direct benefits estoppel" precludes him from avoiding the Arbitration Agreement since he knowingly accepted his Amtrak ticket contract to travel upon Amtrak Train 4.

**C.     The Signatory Passengers' claims that BNSF has waived arbitration are meritless.**

The Signatory Passengers offer the same arguments claiming BNSF has waived arbitration that they offered in their misguided motions to dismiss. *See, e.g.,* Doc. 43-1 at pp. 19-22. These are also the same waiver issues the Signatory Passengers tried to get the state court to rule on when BNSF moved the state court for a discretionary stay pending the outcome of this federal arbitration action. At each turn, the Signatory Passengers offer arguments that demonstrate at best a lack of understanding of the proceedings that have occurred in the Mendon Derailment litigation – and at worst an attempt to mislead both this Court and the state court as to the cases where arbitration is at issue.

In the present briefing, the Signatory Passengers claim BNSF has waived arbitration by: (1) participating in briefing on motions filed by MS Contracting, LLC, the company who owned and operated the dump truck and employed its driver, Billy Barton; (2) taking various actions in

a wrongful death suit Billy Barton's estate has filed against BNSF; (3) participating in hearings and taking actions ordered by the state court; and (4) **offering** to waive arbitration if the Signatory Passengers would agree to consolidate their actions in the United States District Court for the Eastern District of Missouri.

BNSF and one of its roadmasters, Mariano Rodriguez, are defendants in a wrongful death suit filed by the beneficiaries of the decedent dump truck driver, Billy Barton, who was employed by MS Contracting. Docs. 84-3 & 84-4. BNSF does not have an arbitration agreement with Mr. Barton, his beneficiaries, or MS Contracting. Thus, the beneficiary-plaintiff's claims in the *Barton* case are not – and never will be – subject to this action by BNSF to compel arbitration. The same is true of the competing cross-claims between MS Contracting and BNSF that were pending in some state court cases – as well as BNSF and Amtrak's claims against MS Contracting in a suit in this Court, case number 2:22-CV-00037-HEA. In order to argue BNSF has waived arbitration as to their claims, the Signatory Passengers cite to BNSF's activity in other cases (*see, e.g.,* Docs. 84-3 & 84-4), which is illogical and meritless.

To be clear, in state court, BNSF is a defendant in 4 lawsuits involving these Signatory Passengers:

(1) *Holsapple*, Case No. 22CH-CC00024;

(2) *Phan*, Case No. 22CH-CC00022;

(3) *Gallaway*, Case No. 22CH-CC00026; and

(4) *Carreon*, Case No. 22CH-CC00029.

BNSF never even filed answers in any of these cases until state court Judge Terry Tschannen ordered it to do so.

THE COURT: All right. So on behalf of the plaintiffs, I want somebody to talk to me about the waiver issue.

{00226590.DOCX}

…

MR. PECK: And so, having said that, with respect to waiver, the Eighth Circuit's precedence are very clear. The purpose of the waiver doctrine is to make sure that at the earliest possible opportunity, a defendant who has a claim to arbitration seeks to compel arbitration immediately, rather than exhaust any resources of this Court in order to seek any kind of motion practice, including the motion they join to stay proceedings while the National Transportation Safety Board investigated the motion, as my colleague just said, to sever the punitive damages. All of that is unnecessary if there is indeed an arbitration agreement and as a result, they should have sought to compel arbitration immediately. And that's what that the purpose of—

THE COURT: Are you saying that basically that they've been dilatory?

MR. PECK: Yes. Yes. And even two months is considered dilatory under the precedence. What the Eight Circuit has said is, basically, you don't get to just practice in front of a state court for a little while, decide that it's not really working for you, and then seek arbitration. That's considered a do-over and you don't get those, Judge.

THE COURT: **Well, they haven't been here very long.**

MR. PECK: It's been about enough time that there's been practice and certainly there are motions, too, Your Honor, have been answers. And the answer is enough to trigger a waiver.

THE COURT: **Well, they filed those answers because I made them.**

Exhibit 20, Proceedings of Thursday, November 03, 2022, Chariton County Circuit Court, Motion Hearings, at 37:14-16, 40:4-41:9. And when BNSF filed those answers, BNSF raised arbitration as an affirmative defense. *See, e.g.*, Exhibit 21, Answer of Defendant BNSF Railway Company in Chariton County Case No. 22CH-CC00024, at Affirmative Defenses ¶ 13 ("Plaintiffs' claims are barred by and subject to a mandatory arbitration provision included within the Terms and Conditions of the Amtrak passenger tickets of Kim Holsapple, Angelika Salazar, and [N.N.].").

In Missouri, the filing of an answer also triggers the deadline for a party to apply for a change of venue as a matter of right under Missouri Supreme Court Rule 51.03. In order to preserve its right to a venue change in each of the *Holsapple*, *Phan*, *Gallaway*, and *Carreon*

{00226590.DOCX}

7

cases, BNSF explicitly made its Rule 51.03 applications contingent upon the plaintiffs in those cases not being compelled to arbitration – **while being as explicit as possible that BNSF was not intending to waive any rights to arbitration**. *See, e.g.*, <u>Exhibit 22</u>, Defendant BNSF Railway Company's Application for Change of Venue in Chariton County Case No. 22CH-CC00024.

Further, BNSF has hardly found the state court waters "uninviting," as Judge Tschannen has so far agreed to move any Mendon Derailment trial that may happen out of Chariton County. *See, e.g.,* Nov. 4, 2022 Docket Text Order in *White v. BNSF, et al.*, Chariton County Case No. 22CH-CC00027.

1. **BNSF's briefing on MS Contracting's motions to join Amtrak did not waive arbitration.**

MS Contracting filed a motion to join Amtrak as an indispensable and necessary party to Plaintiffs' claims in the *Holsapple* case. BNSF filed a brief on the issue urging the state court – if it was going to compel joinder of Amtrak at all – to join Amtrak as an original defendant rather than a third-party defendant. Notably, this was a motion by one of BNSF's co-defendants, not a motion by BNSF itself or any plaintiff. As BNSF stated in its brief, its position was that adding Amtrak as a third-party defendant would strip the parties of effectively litigating joint and several liability.

If the *Holsapple* action is tried in state court, it will not be by BNSF's choice. The plaintiffs in that action (defendants in this action, including Signatory Passenger Angelika Salazar) chose to violate the Arbitration Agreement and file suit in state court. While BNSF maintains it will likely prevail in its effort to compel arbitration, that has not yet been decided. If BNSF is unsuccessful, it will be forced to defend itself in state court. While BNSF is seeking to compel arbitration, it cannot idly observe issues in the state court that might negatively impact its

{00226590.DOCX}

ability to defend itself there – if it must.

The Signatory Passengers' apparent issue with BNSF's briefing on MS Contracting's motion to join Amtrak is that BNSF did not indicate that those plaintiffs would need to arbitrate their claims against BNSF – and Amtrak if Amtrak were to be joined. However, BNSF had already indicated to various passengers' counsel via communications that BNSF and/or Amtrak were reserving the right to compel arbitration (*see, e.g.*, Doc. 52-2), and BNSF filed its Complaint to Compel Arbitration in this Court – and its corresponding motion to stay in the state court – at the same time it filed its brief on MS Contracting's motion. *See* Docs. 1 & 84-1.

Further, the state court hearing on September 21, 2022, regarding the merits of MS Contracting's motion, actually began with a discussion of BNSF's complaint to compel arbitration filed in this Court. *See* Doc. 84-5 at p. 30 ("It is Wednesday, September 21, 2022…Counsel has appeared this morning, as ordered by this Court, initially to address a discovery conference. Counsel has complied, which the Court appreciates…The Court's been made aware of a motion to compel arbitration. Apparently there's been litigation filed in federal court. And Mr. Hamer, on behalf of Burlington Northern Santa Fe, BNSF, will be arguing that particular motion..."). The Signatory Passengers' contentions that BNSF has indicated an intention to waive arbitration are without merit.

**2. Seeking a stay is the opposite of "engaging litigation machinery."**

The Signatory Passengers offer an argument that BNSF somehow waived arbitration by participating in briefing and a hearing in state court regarding MS Contracting's motion to stay proceedings pending investigation of the derailment by the National Transportation Safety Board. To be clear, BNSF filed a response and reply in support of MS Contracting's motion, but

only in the *Cook* case referenced by the Signatory Passengers. None of the Signatory Passengers are parties in the *Cook* case. *See* Doc. 84-2.

BNSF also participated in the hearing on the issue as requested by the state court. Before the NTSB stay issue had been decided, BNSF filed its Answer to the *Cook* plaintiffs' First Amended Petition and stated "Plaintiffs' claims are barred by and subject to a mandatory arbitration provision included within the Terms and Conditions of the Amtrak passenger tickets of Rachelle Cook, Pauline Magin, and Tiffany Powers." Exhibit 23, Answer of Defendant BNSF Railway Company, at Affirmative Defenses ¶ 14.

Regardless, the stay MS Contracting sought – which BNSF supported – would have been the opposite of engaging in litigation. The rule is that a party "knowingly relinquishes the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1711-12 (2022). "A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007). Black's Law Dictionary (11th ed. 2019) defines a "stay" as "[t]he postponement or halting of a proceeding." It cannot be said that by supporting MS Contracting's effort to halt the litigation machinery, BNSF substantially invoked that machinery.

Finally, BNSF's support of MS Contracting's stay motion had nothing to do with the merits of the case. *See Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 793 (8th Cir. 1998) ("Golf U.S.A. has not acted inconsistently with its right to arbitration because Golf U.S.A. has not attempted to litigate the merits of the case."). Thus, BNSF's support of MS Contracting's stay motion could not constitute a waiver of BNSF's right to arbitration.

**3. BNSF has been consistent in asserting its right to arbitration throughout state court hearings and pleadings.**

"[A] court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713 (2022). "Parties to an agreement may by their oral agreement or their conduct waive the provisions of a contract between them." *Crabby's, Inc. v. Hamilton*, 244 S.W.3d 209, 214 (Mo. App. S.D. 2008) (internal citations omitted). "'Waiver' has been defined as an intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of the party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible." *Bartleman v. Humphrey*, 441 S.W.2d 335, 343 (Mo. 1969).

"Waiver of arbitration is not a favored finding, and there is a presumption against it." *Springleaf Financial Services, Inc. v. Shull*, 500 S.W.3d 276, 281 (Mo. App. S.D. 2016) (citing *Berhorst v. J.L. Mason of Mo., Inc.*, 764 S.W.2d 659, 659 (Mo. App. E.D. 1988)). "[A]ny doubt as to whether waiver has occurred must be resolved in favor of arbitration." *Lovelace Farms, Inc. v. Marshall*, 442 S.W.3d 202, 207 (Mo. App. E.D. 2014) (citing *Stifel, Nicolaus & Co., Inc. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991)).

The Signatory Passengers claim BNSF waived arbitration by participating in state court hearings, but that is not factually what happened in those hearings. The issue of arbitration was raised at the September 21, 2022 state court hearing as noted above. *See* Doc. 84-5 at p. 30. Then it was raised again at the November 3, 2022 hearing – where the passengers also raised waiver for the first time as BNSF's motion to stay the state court proceedings pending the outcome of this federal action was before the state court.

MR. HAMER: Okay. Your Honor, so, just so we're clear what we're asking of you is -- the merits of the issue of whether the claims are subject to arbitration or not, as the Court is aware, that is what is pending in federal court.

…

But the question of whether the claims are subject to arbitration and getting into the facts of that, that is what is before the federal court. All we're asking of you here in our motion to stay is not to permanently stay these proceedings, but to allow that federal court question of -- the initial question of whether we're going to arbitration or not to run its course

…

THE COURT: Okay. I noticed in the -- some of the briefing that the arbitrators tend to adopt the discovery procedures that take place in the state court. The state court's discovery procedures and the arbitration proceedings. This case happened in Missouri, and I assume that they would adopt the Missouri discovery procedures. So could you educate me as to how going forward with discovery here is going to be harmful to you in regards to an arbitration, if that is ultimately where those cases go?

…

MR. MCKENNA: Your Honor, the main issue BNSF would have with participating in discovery right now is the possibility of waiving our rights to arbitration.

THE COURT: Set the waiver aside because that is my next question.

MR. MCKENNA: All right.

THE COURT: All I'm wanting to know is -- let's just focus on discovery. Let's just say I wonder here today and I say we're going to go forward with discovery. How does that hurt you in the arbitration proceeding?

MR. MCKENNA: Without consideration for the waiver issue, I don't believe that there's any hinderance. I believe the discovery in this action and the discovery in arbitration would likely be the same.

THE COURT: Okay. So now let's set discovery aside, and let's go back to the waiver because that was my next question. Are you telling me that if I move these cases forward that causes you to waive your right to arbitration?

MR. MCKENNA: We do believe that would be an issue that would come before the federal court that whether or not we have waived our right to arbitration by participating in this litigation.

…

MR. MCKENNA: So the issue we have, even if plaintiffs agree with us, is that **we're not waiving arbitration.** We will say we're not waiving arbitration. We don't know necessarily what the federal court judge would do with that. There are many cases, and

it's going to be up to that judge, that go into litigation conduct or participating in discovery that they can find you, I believe that languages is "engage the machine of litigation." If you have done that, you have waived your right to arbitration and there's nothing you can do to stop that, Judge.

THE COURT: Even if you put up your hands and tell the world, I'm wrong and I make you do it, you're going to be found away?

MR. MCKENNA: I think it's possible we could.

…

THE COURT: All right. So on behalf of the plaintiffs, I want somebody to talk to me about the waiver issue.

…

MR. DAVIS: So we believe what's already happened is waived. Within three days of this wreck the BNSF filed the lawsuit against MS Contracting. Within that same time period they could have invoked arbitration. They have had this Court rule on various motions, including the motion to stay. They just had a motion to sever punitive damages today. There's been multiple motions that have been ruled on by this Court, and they have already waived arbitration. So –

THE COURT: Let me stop you there for a minute.

MR. DAVIS: Sure.

THE COURT: Your first argument was that they waived it by filing a federal court case. Is that what you told me?

MR. DAVIS: Well, no, Your Honor…

…

MR. PECK: And so, having said that, with respect to waiver, the Eighth Circuit's precedence are very clear. The purpose of the waiver doctrine is to make sure that at the earliest possible opportunity, a defendant who has a claim to arbitration seeks to compel arbitration immediately, rather than exhaust any resources of this Court in order to seek any kind of motion practice, including the motion they join to stay proceedings while the National Transportation Safety Board investigated the motion, as my colleague just said, to sever the punitive damages. All of that is unnecessary if there is indeed an arbitration agreement and as a result, they should have sought to compel arbitration immediately. And that's what that the purpose of—

THE COURT: Are you saying that basically that they've been dilatory?

MR. PECK: Yes. Yes. And even two months is considered dilatory under the precedence. What the Eight Circuit has said is, basically, you don't get to just practice in front of a

state court for a little while, decide that it's not really working for you, and then seek arbitration. That's considered a do-over and you don't get those, Judge.

THE COURT: **Well, they haven't been here very long.**

MR. PECK: It's been about enough time that there's been practice and certainly there are motions, too, Your Honor, have been answers. And the answer is enough to trigger a waiver.

THE COURT: **Well, they filed those answers because I made them.**

…

THE COURT: Sure. And what I'd like to have is, I've heard from the defendants in briefing and regards to the waiver issue. I'd like you in 10 to 15 days to give me a written argument waiver. And give this gentleman a chance to reply. That topic is very important to me, I think, in making this decision. And so you tell me, sir, when you think you could give me something.

MR. DAVIS: Fifteen days is plenty of time.

THE COURT: Fifteen and fifteen? Will that take care of it, guys?

MR. HAMER: Thank you, Your Honor.

THE COURT: Okay.

Ex. 20, at 31:21-25, 32:12-19, 33:19-34:3, 34:18-35:6, 35:7-15, 36:7-21, 37:14-16, 38:5-19, 40:4-41:9, 47:17-48:3.

After the passengers argued the state court should deny BNSF's motion for a discretionary stay because BNSF had already waived arbitration, the court accepted briefing from both BNSF and the passengers on the waiver issue but then correctly noted there was no need or basis for that court to rule on the waiver issue. *See* Dec. 8, 2022 Docket Text Order in *Holsapple, et al. v. BNSF, et al.*, Chariton County Case No. 22CH-CC00024 ("Court hears final argument in regards to BNSF motion to stay this litigation pending the federal court's ruling on the BNSF complaint filed to compel arbitration; BNSF motion to stay is overruled; court makes no finding as to whether BNSF has waived its right to enforce arbitration determining that issue is not before the court at this time."). Nonetheless, the state court denied BNSF's motion for a

{00226590.DOCX}

discretionary stay and is pushing those cases forward, which highlights BNSF's need for this Court to issue injunctive relief that will put a stop to this dual litigation.

**4. The passengers never accepted BNSF's offer to waive arbitration, and the offer itself is not sufficient to constitute waiver.**

It is true that BNSF and Amtrak have made compromise offers to various passengers' counsel to waive arbitration if those state court plaintiffs would agree to have their claims consolidated into one federal court action. BNSF maintains that arbitration would be "the fastest and best way" to resolve these claims – if the passenger-plaintiffs would agree to honor their contractual obligations, rather than forcing BNSF to pursue a court order compelling enforcement of the provision. Now, BNSF and the passenger-plaintiffs must spend considerable time and resources litigating what is essentially a breach-of-contract action before likely heading to arbitration to decide the passenger-plaintiffs' tort claims.

However, BNSF and Amtrak's offer to waive arbitration in favor of the federal venue was nothing more than it appears on its face – an offer to compromise and avoid the expense of time and resources that is now occurring, akin to any other settlement offer typically made during litigation. BNSF specifically indicated in its communications that it was reserving its arbitration rights if passenger-plaintiffs did not accept BNSF's offer. As recently noted by an Illinois federal court, "Defendants' preservation of the arbitration rights would be wholly unnecessary if Defendants intended to waive them." *Friends for Health: Supporting the North Shore Health Center v. PayPal, Inc.*, No. 17 CV 1542, 2022 WL 2799396, at *3 (N.D. Ill. July 14, 2022).

Undoubtedly, BNSF and Amtrak *offered* to waive arbitration if the passenger-plaintiffs would agree to consolidate their actions in the United States District Court for the Eastern District of Missouri, but counsel for the passenger-plaintiffs declined the offer. "Generally,

{00226590.DOCX}

15

contracts may be modified as to particular provisions or have new terms engrafted thereon…"

*Woodson v. Bank of America, N.A.*, 602 S.W.3d 316, 325 (Mo. App. E.D. 2020) (internal

citations omitted). "In order for a modification of a prior contract to be enforceable, it must be

based on mutual assent and supported by consideration…To determine whether there was a

meeting of the minds, we look to the parties' objective manifestations of intent…A meeting of

minds occurs when there is a definite offer and an unequivocal acceptance." *Id.* Here, there was

no meeting of the minds on BNSF's offer. The passengers did not accept it. The Signatory

Passengers cannot provide any authority for the proposition that BNSF's *offer* to waive

arbitration constituted actual waiver – because none exists.

BNSF has not taken any clear, unequivocal, and decisive actions that would constitute

intentional relinquishment of its contractual right to arbitration.

### D.      The Signatory Passengers' constitutional arguments are unavailing.

### 1.   The constitutional rights cited by the Signatory Passengers are inapplicable to the Signatory Passengers' state court actions.

The Signatory Passengers argue that the Arbitration Agreement violates their Seventh

Amendment right to a trial by jury. Doc. 84 at p. 19. However, for more than a century, the rule

has been clear "that the 7th Amendment applies only to proceedings in the courts of the United

States, and does not in any manner whatever govern or regulate trials by jury in state courts."

*Minneapolis & St. L.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916). The Signatory Passengers

brought their personal injury actions – and seek jury trials – in Missouri state court. Thus, the

Seventh Amendment has no bearing on this analysis. In fact, the same is true for each of the first

ten Amendments. *Id.* ("[T]he first ten Amendments, including, of course, the 7th, are not

concerned with state action, and deal only with Federal action."). The same is also true of the

Fourteenth Amendment, which the Signatory Passengers also cite. Doc. 84 at p. 19; *Hardware*

{00226590.DOCX}

16

*Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*, 284 U.S. 151, 158 (1931) ("The Fourteenth Amendment neither implies that all trials must be by jury, nor guarantees any particular form or method of state procedure.").

The Signatory Passengers also point to the "right to travel," which BNSF addressed in its initial brief. Doc. 78 at pp. 25-27. The Signatory Passengers claim "Amtrak's arbitration agreement forces a person who wishes to use a government-sponsored rail service to travel to give up a right of access to the courts and to trial by jury." Doc. 84 at p. 20. However, as the Signatory Passengers themselves have so thoroughly argued (Doc. 84 at pp. 33-35), there are several ways for customers to purchase Amtrak tickets without agreeing to arbitration. Of course, all of these Signatory Passengers chose to use methods that presented the arbitration provision – and they unequivocally assented to arbitration by clicking the "I Agree" button – but, nonetheless, there were other options.

**2. Amtrak is not acting as "the government" when it enters into private contracts with its customers.**

As BNSF expected when it filed its initial brief (Doc. 78), the Signatory Passengers have raised *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) and *Department of Transp. v. Association of American R.R.'s*, 575 U.S. 43, 53 (2015) for the proposition that Amtrak is a federal agency. At pages 17-18 of Doc. 78, BNSF already explained how those cases are distinguished from the instant situation, and the Signatory Passengers make no attempt to contradict BNSF's explanation. But, of course, these distinctions are important.

In 2008, Congress passed the Passenger Rail Investment and Improvement Act (PRIIA). Under PRIIA, the "[Federal Railroad Administration] and Amtrak, in consultation with the Surface Transportation Board, Amtrak's host railroads, States, Amtrak's labor organizations, and rail passenger associations are to develop metrics and minimum standards for measuring the

{00226590.DOCX}

17

performance and service quality of intercity passenger train service...Following issuance of the metrics and standards, Amtrak is to develop and implement a plan to improve on-board service in accordance with the metrics and standards." Federal Railroad Administration Overview, Highlights and Summary of the Passenger Rail Investment and Improvement Act of 2008 (PRIIA), *Public Law No. 110-432, Division B, enacted Oct. 16, 2008, Amtrak/High-Speed Rail*, attached as <u>Exhibit 24</u>. Through their trade association, the host railroads sued the U.S. Department of Transportation, arguing that it was unconstitutional for Congress to give Amtrak the power to create these metrics and standards and then impose upon the host railroads a plan to improve these metrics and standards. *See Association of American Railroads v. Department of Transp.*, 865 F.Supp.2d 22 (D.D.C. 2012). The United States Supreme Court disagreed with the host railroads' argument and held that – **for the explicit purpose of the PRIIA statute** – Amtrak was authorized to proceed like a government actor, in tandem with the Federal Railroad Administration. *Association of American R.R.'s*, 575 U.S. at 55. SCOTUS's holding was not "Amtrak is a government agency, for all purposes and in all situations, from now until the end of time." And SCOTUS was very explicit in making that distinction – "the Court holds that Amtrak is a governmental entity, not a private one, **for purposes of determining the constitutional issues presented in this case.**" *Id.* The Eighth Circuit itself has recognized that the holding in *Association of American R.R.'s* was quite limited. *See Union Pacific Railroad Company v. Surface Transportation Board*, 863 F.3d 816, 821 (8th Cir. 2017) (discussing *Association of American R.R.'s* and noting that the Court held "that **for purposes of the constitutional issues at play**, Amtrak was a governmental entity, not a private one.") (emphasis added).

In *Lebron*, "Amtrak prohibited an artist from installing a politically controversial display in New York City's Penn Station. The artist sued Amtrak, alleging a violation of his First

Amendment rights." *Association of American R.R.'s*, 575 U.S. at 54. Thus, in *Lebron*, Amtrak's role as government property-owner was at issue. In *Association of American R.R.'s*, it was Amtrak's role as government regulator in a statute passed by Congress. As BNSF noted in its original brief, the context – the type of action Amtrak takes – matters. Amtrak was a federal actor in those two cases because of the actions it took, but that does not mean it is a federal actor for all purposes. *See Montilla v. Federal National Mortgage Association*, 999 F.3d 751, 756 (1st Cir. 2021) ("That a federal agency exercising a portion of its statutory powers in one role is a government actor does not as a matter of law mean that it is a government actor for all purposes…").

For instance, in *Montilla*, the First Circuit dealt with claims that the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), together with the Federal Housing Finance Agency ("FHFA"), violated individuals' Fifth Amendment rights by conducting foreclosure sales. *Id.* at 754. Like Amtrak, Fannie Mae and Freddie Mac were created by federal charter, with a purpose to "support the development of the secondary mortgage market" rather than operating intercity passenger rail service. *Id.* Like the Federal Railroad Administration sometimes works in tandem with Amtrak, the FHFA works with Fannie Mae and Freddie Mac. *Id.* at 754-55. In *Montilla*, it was undisputed that the FHFA was a federal agency that **sometimes** acts as the government. *Id.* at 756. But none of the FHFA, Fannie Mae, or Freddie Mac were acting as government agencies when they conducted private foreclosure sales. *Id.* at 758-762.

Amtrak does not act as "the government" when it enters into private contracts with its customers.

**3.   Even if Amtrak was "the government," government arbitration does not actually pose a constitutional issue.**

As explained in BNSF's original brief (Doc. 78 at p. 23), even if Amtrak qualified as a government entity here, it is well-established that government arbitration poses no *per se* constitutional problem. "The government may expressly enter into binding arbitration 'assuming the availability of authority to effect any remedy that might result from the arbitration.'" *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 929 n. 13 (9th Cir. 2009) (quoting *Constitutional Limitations on Federal Government Participation in Binding Arbitration*, 19 Op. O.L.C. 208, 232 & n. 4 (1995) [hereinafter "*OLC Opinion*"]). The Federal Arbitration Act provides that authority, through actions in federal court to confirm arbitration awards and appeals therefrom. *See* 9 U.S.C. §§ 9-11, 16. And for more than two decades, the Administrative Dispute Resolution Act has not just allowed, but encouraged, federal agencies to use arbitration "as an alternative means of dispute resolution whenever all parties consent." 5 U.S.C. § 575(a).

The Office of Legal Counsel at the U.S. Department of Justice ("OLC") has conducted a full examination of the constitutionality of government arbitration. Like the courts that have examined government arbitration, OLC has determined that no "constitutional provision or doctrine [imposes] a general prohibition against the federal government entering into binding arbitration." *OLC Opinion*, 19 Op. O.L.C. at 234. It has also opined that, "assuming the availability of authority to effect any remedy that might result from the arbitration, we perceive no broad constitutional prohibition [under Article III] on the government entering into binding arbitration." *Id.* at 232.

**E.   BNSF is an intended third-party beneficiary in the identifiable class of "host railroads" to whom Amtrak owes indemnity.**

"A third-party beneficiary is one who is not privy to a contract but may nonetheless maintain a cause of action for breach of contract." *Saint Luke's Hosp. of Kansas City v. Benefit*

20

*Mgmt. Consultants, Inc.*, 626 S.W.3d 731, 751 (Mo. App. W.D. 2021) (citing *Septagon Constr. Co. Inc.-Columbia v. Indus. Dev. Auth. of City of Moberly*, 521 S.W.3d 616, 624 (Mo. App. W.D. 2017)). "The rights of third-party beneficiaries depend on the terms of the contract itself." *Id.* "The third-party beneficiary need not be named in the contract, but the contract terms must clearly and directly express an intent to benefit an identifiable person or class." *Id.*

"The question of intent is paramount in any analysis of an alleged third party beneficiary situation. The intention of the parties is to be gleaned from the four corners of the contract…" *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 41 (Mo. App. E.D. 1980). "Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action." *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 213 (Mo. App. E.D. 1987). "Third party beneficiary rights depend on, and are measured by, the terms of the contract between the promisor and the promisee. Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on the third person, but rather on an intent that the promisor assume a *direct obligation* to him." *Id.* (emphasis in original).

The language of the Arbitration Agreement is clear:

"Amtrak and Customer…AGREE that this Arbitration Agreement applies…to claims Amtrak may have against You and claims You may have against Amtrak…or **against any party to which Amtrak owes indemnity (which party may also enforce this Agreement), including without limitation any host railroad**…"

*See, e.g.,* Doc. 79-5 (emphasis added).

The Signatory Passengers' assertion that they could not possibly know – even with "extreme diligence" – what "host railroad" means is a stretch. The identities of Amtrak's host railroads are not secret. It is worthwhile to note that each of the Signatory Passengers purchased their tickets through the Internet. All they had to do was open a new tab or window in their Internet browser of choice and proceed to Google "host railroad" or "Amtrak host railroad." The

{00226590.DOCX}

first resulting link is a document published by Amtrak Media explaining what a "host railroad" is and identifying all of them, attached as Exhibit 25. That simple exercise could hardly be called "extreme diligence." If the Signatory Passengers cared to learn, they easily could have discovered the meaning of "host railroad," or they could have simply asked Amtrak. Instead, they clicked "I Agree" and unequivocally assented to the Terms and Conditions, which gives rise to a presumption as a matter of law that they had knowledge of what they were signing. *Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543, 553 (Mo. App. W.D. 2017) ("Missouri law presumes that a party had knowledge of the contract he or she signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing.") (citing *Grossman v. Thoroughbred Ford, Inc.*, 297 S.W.3d 918, 922 (Mo. App. W.D. 2009)).

## **CONCLUSION**

For the reasons stated in BNSF's original brief (Doc. 78) and the reasons stated in this Reply, the Court should grant BNSF's First Motion for Partial Summary Judgment (Doc. 77), compel the Signatory Passengers to arbitration, and enjoin them from continuing to pursue their state court actions.

Respectfully submitted,

 /s/ Sean P. Hamer
Sean P. Hamer          MO # 48153
Scott R. Ast           MO # 51699
Paula Brown            MO # 45870
Alex A. McKenna        MO # 72024
SCHARNHORST AST KENNARD GRIFFIN, P.C.
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
T: (816) 268-9400/F: (816) 268-9409
Email:  shamer@sakg.com
        sast@sakg.com
        pbrown@sakg.com
        amckenna@sakg.com


Mark S. Landman  (*Pro Hac Vice Pending*)
John A. Bonventre (*Pro Hac Vice Pending*)
LANDMAN CORSI BALLAINE & FORD, P.C.
120 Broadway, 13th Floor
New York, New York 10271
T: (212) 238-4800/F: (212) 238-4848
Email: mlandman@lcbf.com
Email:  jbonventre@lcbf.com

*Attorneys for BNSF Railway Company*


## CERTIFICATE OF SERVICE

I certify that on the 24th day of February 2023, a true and accurate copy of the foregoing was filed through the Court's electronic filing system, which will serve notification upon all interested parties.

 /s/ Sean P. Hamer
Attorney