```
 1                IN THE CHARITON COUNTY CIRCUIT COURT
 2                        KEYTESVILLE, MISSOURI

 3   ERIN BARTON,                    )
                                     )
 4            Plaintiff,             )
                                     )
 5   vs.                             )   Case No. 22CH-CC00017
                                     )
 6   MARIANO RODRIGUEZ, et al.,      )
                                     )
 7            Defendants.

 8   ------------------------------

 9   BRIAN MARRA, et al.,            )
                                     )
10            Plaintiffs,            )
                                     )
11   vs.                             )   Case No. 22CH-CC00019
                                     )
12   BNSF RAILWAY COMPANY, et al.,   )
                                     )
13            Defendants.            )

14   ------------------------------

15   BRENT POWERS, et al.,           )
                                     )
16            Plaintiffs,            )
                                     )
17   vs.                             )   Case No. 22CH-CC00021
                                     )
18   MS CONTRACTING, LLC,            )
                                     )
19            Defendant.             )

20   ------------------------------

21   SHAUN PHAN, et al.,             )
                                     )
22            Plaintiffs,            )
                                     )
23   vs.                             )   Case No. 22CH-CC00022
                                     )
24   MS CONTRACTING, LLC, et al.,    )
                                     )
25            Defendants.            )
```

             Melanie Forquer, Certified Court Reporter No. 1492
                        Chariton County, Missouri
                                  Copy

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   ------------------------------
 2   DANIEL HOLSAPPLE, et al.,    )
                                  )
 3            Plaintiffs,         )
                                  )
 4   vs.                          )   Case No. 22CH-CC00024
                                  )
 5   MS CONTRACTING, LLC, et al., )
                                  )
 6            Defendants.         )
                                  )
 7   ------------------------------
 8   IESHA COLEMAN,               )
                                  )
 9            Plaintiff,          )
                                  )
10   vs.                          )   Case No. 22CH-CC00025
                                  )
11   NATIONAL RAILROAD PASSENGER, )
     et al.,                      )
12                                )
              Defendants.
13   ------------------------------
14   ALLEN GALLAWAY, et al.,      )
                                  )
15            Plaintiffs,         )
                                  )
16   vs.                          )   Case No. 22CH-CC00026
                                  )
17   MS CONTRACTING, LLC, et al., )
                                  )
18            Defendants.         )

19   ------------------------------

20   CARILYN WHITE,               )
                                  )
21            Plaintiff,          )
                                  )
22   vs.                          )   Case No. 22CH-CC00027
                                  )
23   NATIONAL RAILROAD PASSENGER, )
     et al.,                      )
24                                )
              Defendants.         )
25   ------------------------------
```

Melanie Forquer, Certified Court Reporter No. 1492
Chariton County, Missouri
Copy

2

EXHIBIT 20
2:22-CV-00068-RLW

1 **PROCEEDINGS OF THURSDAY, NOVEMBER 03, 2022**

2 **CHARITON COUNTY CIRCUIT COURT**

3 **MOTION HEARINGS**

4

5      THE COURT:  The Court is going to go on the

6 record in the matter of Daniel Holsapple, et al., versus

7 MS Contracting, et al., case 22CH-CC00024.  It is

8 Thursday, November 3, 2022.  We are in the circuit court

9 of Chariton County and we are sitting in the circuit

10 division.  Parties appear by their respective counsel.

11 The Court is going to address at this time a motion that

12 has been filed by BNSF Railway to stay the litigation in

13 this along with a few other cases, which the Court will

14 supplement its record later.

15      Mr. Hamer, I was asking you about the status and

16 summary of the current litigation that is pending in the

17 federal court where you have filed to compel arbitration.

18          MR. HAMER:  Correct, Your Honor.  Are you ready

19 for me to --

20          THE COURT:  Yes, sir.

21          MR. HAMER:  Okay.  Your Honor, so, just so we're

22 clear what we're asking of you is -- the merits of the

23 issue of whether the claims are subject to arbitration or

24 not, as the Court is aware, that is what is pending in

25 federal court.  There has been a lot of briefing on the

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   plaintiffs' for this part getting into the merits.  We're
 2   not asking, you know, haven't presented to you, and that
 3   issue is not before you, respectfully, Your Honor.  That's
 4   what that federal case is about.  As to the status of
 5   that, we have served, now, all of the passengers in that
 6   case,  with two remaining to be served.  There's a lot of
 7   passengers that are part of that case.  There's two that
 8   we've -- still have to serve, but everybody else has been
 9   served.  As we discussed with the Court last time, the
10   reason for filing that is we believe that it is the
11   quickest means to resolution for these passengers; to get
12   it to arbitration.  But the question of whether the claims
13   are subject to arbitration and getting into the facts of
14   that, that is what is before the federal court.
15         All we're asking of you here in our motion to stay
16   is not to permanently stay these proceedings, but to allow
17   that federal court question of -- the initial question of
18   whether we're going to arbitration or not to run its
19   course, which is a very limited time frame once we've got
20   these people served.  We would respectfully submit that
21   once we've got that effected we could get it noticed up
22   for hearing shorter.
23         I really think that Mr. Davis, and he can certainly
24   speak to that, if he want's it to move quite that quickly.
25   He perhaps feels that there's some discovery issues.  It's
```

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   not our request that that proceeding be prolonged.  We
 2   want to move swiftly on that and get that question
 3   answered.  But the only thing that we're asking you to do
 4   here is to allow that proceeding to run its course and let
 5   the questions be answered here.  They want to bring that
 6   before you, but it is not for you, Your Honor, the
 7   question of arbitration.  So -- so what we're not asking
 8   is you to rule, Okay, subject to arbitration, these cases
 9   are forever stayed and we never proceed in this court at
10   any time.  That is what was before you.  That is really
11   not a discretionary ruling.  We fully acknowledge that --
12   that this question of whether we can get to the answer of
13   whether we go or not is -- is a limited time period where
14   you have discretion to stay or not.  We're asking you to
15   do it.
16              THE COURT:  Let me stop you there because
17   there's a couple of things I want you to talk about.
18              MR. HAMER:  Sure.
19              THE COURT:  Okay.  I noticed in the -- some of
20   the briefing that the arbitrators tend to adopt the
21   discovery procedures that take place in the state court.
22   The state court's discovery procedures and the arbitration
23   proceedings.  This case happened in Missouri, and I assume
24   that they would adopt the Missouri discovery procedures.
25   So could you educate me as to how going forward with
```

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   discovery here is going to be harmful to you in regards to
 2   an arbitration, if that is ultimately where those cases
 3   go?
 4              MR. HAMER:  I might enlist in some help from my
 5   folks here but --
 6              THE COURT:  Sure.
 7              MR. HAMER:  I've got, Your Honor, I also have
 8   Alex McKenna here.
 9              THE COURT:  Sure.
10              MR. HAMER:  And when I said people are helping
11   me brief, he's the expert here on a lot of these
12   arbitration things.  So if it would be okay with the
13   Court --
14              THE COURT:  Absolutely.
15              MR. HAMER:  -- I'll have him comment on that, if
16   you don't mind.
17              THE COURT:  Absolutely.
18              MR. MCKENNA:  Your Honor, the main issue BNSF
19   would have with participating in discovery right now is a
20   the possibility of waiving our rights to arbitration.
21              THE COURT:  Set the waiver aside, because that
22   is my next question.
23              MR. MCKENNA:  All right.
24              THE COURT:  All I'm wanting to know is -- let's
25   just focus on discovery.  Let's just say I wonder here
```

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   today and I say we're going to go forward with discovery.
 2   How does that hurt you in the arbitration proceeding?
 3              MR. MCKENNA:  Without consideration for the
 4   waiver issue, I don't believe that there's any hinderance.
 5   I believe the discovery in this action and the discovery
 6   in arbitration would likely be the same.
 7              THE COURT:  Okay.  So now let's set discovery
 8   aside, and let's go back to the waiver because that was my
 9   next question.  Are you telling me that if I move these
10   cases forward that causes you to waive your right to
11   arbitration?
12              MR. MCKENNA:  We do believe that would be an
13   issue that would come before the federal court that
14   whether or not we have waived our right to arbitration by
15   participating in this litigation.
16              THE COURT:  Have you put your best cases in your
17   reply brief?
18              MR. MCKENNA:  Yes, they are.
19              THE COURT:  Okay.  Talk to me about that a
20   little bit.
21              MR. MCKENNA:  So there's a recent -- there is a
22   2022 US Supreme Court holding.  There have been some past
23   cases in the Eighth Circuit and other federal court
24   holdings that there had to be prejudice to the plaintiffs
25   before -- or to the nonmoving party before the compelling
```

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   party could be found to have waived the right to
 2   arbitration.  This 2022 US Supreme Court case says that
 3   you have to consider the prejudice of the plaintiff.
 4             THE COURT:  Is that case in your brief?
 5             MR. MCKENNA:  It is.
 6             THE COURT:  Okay.  Go ahead.
 7             MR. MCKENNA:  So the issue we have, even if
 8   plaintiffs agree with us, is that we're not waiving
 9   arbitration.  We will say we're not waiving arbitration.
10   We don't know necessarily what the federal court judge
11   would do with that.  There are many cases, and it's going
12   to be up to that judge, that go into litigation conduct or
13   participating in discovery that they can find you, I
14   believe that languages is "engage the machine of
15   litigation."  If you have done that, you have waived your
16   right to arbitration and there's nothing you can do to
17   stop that, Judge.
18             THE COURT:  Even if you put up your hands and
19   tell the world, I'm wrong and I make you do it, you're
20   going to be found away?
21             MR. MCKENNA:  I think it's possible we could.
22             THE COURT:  Do you have a case that's says that?
23   Do any of your cases indicate?
24             MR. MCKENNA:  That, like, if a state court
25   judge --
```

EXHIBIT 20
2:22-CV-00068-RLW

```
 1              THE COURT:  If I run right over you and say, No
 2   you're wrong and you're going to go forward with discovery
 3   and you're going to participate, have you found a case
 4   that says in that circumstance that the defendant has
 5   waived?
 6              MR. HAMER:  No, Your Honor.
 7              THE COURT:  Okay.  Is the issue -- is it
 8   discretionary?  Oh, no, it can't be discretionary, there's
 9   no way.
10              MR. MCKENNA:  Right, it's not discretionary.
11              THE COURT:  Okay.
12              MR. MCKENNA:  It is a bevy of case law and what
13   conduct amounts to waiving arbitration.
14              THE COURT:  All right.  So on behalf of the
15   plaintiffs, I want somebody to talk to me about the waiver
16   issue.
17              MR. DAVIS:  Okay, Your Honor.  I can talk about
18   that.  When we get to the substance, Mr. Peck is going to
19   do the argument.
20              THE COURT:  Okay.  And --
21              MR. DAVIS:  On -- Go ahead.  I will wait on you.
22              THE COURT:  Oh, that's all right.  I just want
23   to point out to everybody that I realize that there hasn't
24   been a motion to dismiss filed.  There has been a motion
25   filed to compel arbitration based on arbitration as a
```

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   potential defense.  So I get that, but I'm more focused on
 2   the waiver right now.
 3              MR. DAVIS:  Sure.
 4              THE COURT:  Go ahead.
 5              MR. DAVIS:  So we believe what's already
 6   happened is waived.  Within three days of this wreck the
 7   BNSF filed the lawsuit against MS Contracting.  Within
 8   that same time period they could have invoked arbitration.
 9   They have had this Court rule on various motions,
10   including the motion to stay.  They just had a motion to
11   sever punitive damages today.  There's been multiple
12   motions that have been ruled on by this Court, and they
13   have already waived arbitration.  So --
14              THE COURT:  Let me stop you there for a minute.
15              MR. DAVIS:  Sure.
16              THE COURT:  Your first argument was that they
17   waived it by filing a federal court case.  Is that what
18   you told me?
19              MR. DAVIS:  Well, no, Your Honor.  I would say
20   this -- this just shows that they say they can't act
21   quickly, within three days they filed a lawsuit.  So if
22   they're saying they needed some extraordinarily length of
23   time to figure out that they have arbitration rights, then
24   they should have served arbitration rights, we think
25   that's not true.  We don't think they're so --
```

```
1                THE COURT:  All right.  Go ahead.
2                MR. DAVIS:  That was my point, Your Honor.
3                THE COURT:  Go ahead.
4                MR. DAVIS:  So on the waiver issue, I'm going to
5   stay strictly of the waiver issue as we are.  That should
6   not come into play for this Court.  You have -- they have
7   the burden and it's a strong burden, it's a heavy burden
8   to get a stay, and we totally disagree.  You have to look
9   at why they're asking for the stay.  And I think that
10  you're going to find that the reasons that they are asking
11  for the stay is something that doesn't exist.  That
12  they -- that does not exist.  And we have to look at that
13  issue and that's what Mr. Peck is going to argue about and
14  talk about, but --
15       You want to take it there, pal?
16               MR. PECK:  Well, I would like to complete the
17  discussion of the waiver issue.  But before I do, I want
18  to point out to the Court that today, which is the day
19  that answer of dispositive motion would have been -- would
20  be due in the federal case.  We are filing a motion to
21  dismiss for lack of subject matter jurisdiction, which is
22  allowed to question whether there is a valid arbitration
23  group and -- and dispute facts that are in the complaint.
24  So the Court should be aware that.
25               THE COURT:  Is the basis of that, that it would
```

39

EXHIBIT 20
2:22-CV-00068-RLW

1  send it down here to me?
2          MR. DAVIS:  Yes.
3          THE COURT:  Okay.  Go ahead.
4          MR. PECK:  And so, having said that, with
5  respect to waiver, the Eighth Circuit's precedence are
6  very clear.  The purpose of the waiver doctrine is to make
7  sure that at the earliest possible opportunity, a
8  defendant who has a claim to arbitration seeks to compel
9  arbitration immediately, rather than exhaust any resources
10 of this Court in order to seek any kind of motion
11 practice, including the motion they join to stay
12 proceedings while the National Transportation Safety Board
13 investigated the motion, as my colleague just said, to
14 sever the punitive damages.  All of that is unnecessary if
15 there is indeed an arbitration agreement and as a result,
16 they should have sought to compel arbitration immediately.
17 And that's what that the purpose of--
18         THE COURT:  Are you saying that basically that
19 they've been dilatory?
20         MR. PECK:  Yes.  Yes. And even two months is
21 considered dilatory under the precedence.  What the Eight
22 Circuit has said is, basically, you don't get to just
23 practice in front of a state court for a little while,
24 decide that it's not really working for you, and then seek
25 arbitration.  That's considered a do-over and you don't

EXHIBIT 20
2:22-CV-00068-RLW

1    get those, Judge.
2         THE COURT:  Well, they haven't been here very
3    long.
4         MR. PECK:  It's been about enough time that
5    there's been practice and certainly there are motions,
6    too, Your Honor, have been answers.  And the answer is
7    enough to trigger a waiver.
8         THE COURT:  Well, they filed those answers
9    because I made them.
10        MR. PECK:  As Your Honor heard earlier, that
11   does not matter to the Eighth Circuit.  We should've
12   sought immediate relief in the federal court.
13        So having said that, I also want to point out that
14   there is no prejudice to them.  And although there is a
15   2022 decision, the Sundance case from the Supreme Court,
16   that said with respect to only a limited issue, whether or
17   not there is waiver, is -- we don't consider prejudice to
18   the plaintiff.  But with respect to a stay like this, we
19   do consider the competing prejudices.  And if there is no
20   valid arbitration agreement, as we've said, then there is
21   no right to a stay because there's no prejudice at all to
22   the defendant.  But because there is clearly no valid
23   arbitration agreement for, we contend for anyone, but
24   certainly for some of the plaintiffs, then there's clear
25   prejudice on the plaintiffs' side.

EXHIBIT 20
2:22-CV-00068-RLW

```
 1                THE COURT:  I'd like somebody from your office
 2   to get me a copy of that decision and e-mail it to me.
 3                MR. HAMER:  Okay.  Sure.
 4                THE COURT:  National Health Insurance Company.
 5                MR. HAMER:  Sure.  I think we have a hard copy
 6   of it here, right now, if you'd like it.  But we didn't --
 7                THE COURT:  Well, before you leave just drop
 8   it -- drop it up here.  That would be great.
 9                MR. HAMER:  We'll do that.
10                MR. PECK:  Your Honor, with respect to that
11   case, when you read the case you will see that what the
12   Eastern District did was, first, go through to determine
13   whether or not there was a valid arbitration agreement,
14   found that none of the objections the plaintiffs had there
15   were valid, and as a result were ordered to stay.  That's
16   a very different situation.
17                THE COURT:  Sure.  And what I'd like to have is,
18   I've heard from the defendants in briefing and regards to
19   the waiver issue.  I'd like you in 10 to 15 days to give
20   me a written argument waiver.  And give this gentleman a
21   chance to reply.  That topic is very important to me, I
22   think, in making this decision.  And so you tell me, sir,
23   when you think you could give me something.
24                MR. DAVIS:  Fifteen days is plenty of time.
25                THE COURT:  Fifteen and fifteen?  Will that take
```

EXHIBIT 20
2:22-CV-00068-RLW

```
 1   care of it, guys?
 2             MR. HAMER:  Thank you, Your Honor.
 3             THE COURT:  Okay.
 4             MR. DAVIS:  And, Your Honor, you say you'd like
 5   to see the pleadings that are being filed in federal court
 6   on this issue earlier, correct?
 7             THE COURT:  I don't -- I don't think I need to
 8   see the federal court filings.  You guys have educated me
 9   where you're at.  I -- obviously, if that court gets
10   deprived of jurisdiction on this issue I want to know
11   about it right away.  For obvious reasons.
12         So, Mr. Hamer, I'm going to show your motion to
13   stay under advisement.
14             MR. HAMER:  Thank you, Your Honor.
15             THE COURT:  Unless there's anybody else that
16   wants to be heard on this topic?
17         Court sees no hands.
18         Let's go off the record.
19             (A discussion was held off record.)
20             THE COURT:  Court is back on the record in the
21   matter of Daniel Holsapple and MS Contracting, along with
22   the other cases that were set today for discovery
23   conference.  Let the record reflect that the Court will
24   expect to have on December 8 at one o'clock a set of
25   documents that would be an agreeable, acceptable
```

EXHIBIT 20
2:22-CV-00068-RLW