# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-CV-68 RLW |
| ) | |
| PAULINE MAGIN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motions to dismiss. (ECF Nos. 109, 111, 113, 115, 141, 146). Plaintiff BNSF Railway Company opposes the motions and they are ready for disposition. The Court will grant Defendants Pauline Magin, Angelika Salazar, and N.N.'s motion to dismiss as to Pauline Magin in her capacity as representative for the wrongful death beneficiaries of Kim Holsapple. (ECF No. 109). The Court will deny the remaining motions to dismiss in their entireties. (ECF Nos. 111, 113, 115, 141, 146). On its own motion, the Court will dismiss Brent Powers and William Magin for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

### Background and Facts

On June 27, 2022, Defendants Kim Holsapple, Angelika Salazar, N.N., Rachelle Cook, Tiffany Powers, Pauline Magin, Binh Phan, Shaun Phan, A.P, Vui Nguyen, Ngoc Pham, Dung Pham, Ngoan Pham, Vy Pham, Thanh Le, Thinh Mai, A.M., A.M., Estevan Carreon, Jane Carreon, Tami Lakey, A.L, Allen Gallaway, Noel Lucero, Sherri Schwanz, Kimberly Howard, Ruth Sanborn, Laura Rojas, and Deborah Wynne were traveling as passengers on National Railroad Passenger Corporation ("Amtrak") Train 4, commonly known as the Southwest Chief. (ECF No.

102 at ¶ 55). The train was traveling from Los Angeles to Chicago when it struck a dump truck at U.S. Department of Transportation Crossing No. 005284Y near Mendon, Missouri. *Id.* at ¶ 56. The collision caused the train to derail. *Id.* Several impacted passengers have filed state court actions asserting claims of negligence and wrongful death against track owner BNSF Railway Company. As relevant here, those actions include case numbers 22CH-CC00021, 22CH-CC00022, 22CH-CC00024, 22CH-CC00026, 22CH-CC00029, 22CH-CC00038, 23CH-CC00004, and 23CH-CC00014. (ECF No. 102 at ¶¶ 52).[1]

BNSF filed this federal action on September 20, 2022. (ECF No. 1). Six days later, the Court entered an order directing BNSF to file an amended complaint alleging additional facts relating to the citizenship of all parties. (ECF No. 8). BNSF filed its First Amended Complaint on October 3, 2022. (ECF No. 9). After reviewing the parties' briefings on several motions to dismiss, the Court issued an Order Concerning Jurisdiction on July 17, 2023. (ECF No. 98). The Order directed Plaintiff to file another amended complaint further clarifying the Court's jurisdiction over this matter. *Id.* BNSF filed its Second Amended Complaint on August 18, 2023. (ECF No. 102).

According to BNSF, passengers must accept Amtrak's Terms and Conditions when purchasing a ticket on Amtrak's website or app. (ECF No. 102 at ¶ 57). BNSF asserts that before purchasing a ticket online, passengers must click a box acknowledging that they "have read and agree to the terms and conditions, including the binding arbitration agreement[.]" *Id.* at ¶ 58. The Arbitration Agreement provides, in relevant part:

---

[1] In addition to relying on BNSF's Second Amended Complaint, the Court reviewed information available on Case.net, Missouri's online case management system. The Court takes judicial notice of these public records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that the district court may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records.").

2

> [T]his Arbitration Agreement applies, without limitation, to claims Amtrak may have against You and claims You may have against Amtrak and any affiliates or related entities, or against any party to which Amtrak owes indemnity (which party may also enforce this Agreement), including without limitation any host railroad, based upon or related to: these Terms and Conditions, breach of contract, tort claims, common law claims, Your relationship with Amtrak, tickets, services and accommodations provided by Amtrak, carriage on Amtrak trains and equipment, any personal injuries (including, but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages arising out of or related to any personal injury), and any claims for discrimination and failure to accommodate, which shall be decided by a single arbitrator through binding arbitration and not by a judge or jury.

*Id.* at ¶ 62. The Agreement defines "You" as the purchaser and "any individuals for whom [the purchaser] purchase[s] tickets, including, without limitation, family members, minor passengers, colleagues and companions[.]" *Id*. The Arbitration Agreement purports to give the arbitrator exclusive authority over all disputes regarding the Agreement's validity, applicability, enforceability, unconscionability, waiver, and voidability. (ECF No. 9-6 at 58; ECF No. 9-7 at 59).

BNSF contends that Defendants' state-law claims are subject to the Arbitration Agreement. (ECF No. 102 at ¶ 1). BNSF seeks an order from this Court compelling arbitration of Defendants' claims under the Federal Arbitration Act, 9 U.S.C. § 4. *Id.* BNSF also asks this Court to enjoin Defendants from pursuing their state actions against BNSF pending arbitration. *Id.*

Presently at bar are the following motions to dismiss:

- **ECF No. 109** by Pauline Magin, Angelika Salazar, and N.N., a minor by and through his Next Friend, Angelika Salazar.

- **ECF No. 111** by Tiffany Powers, Nick Cook, Pauline Magin, and Brandon Beggs as wrongful death heirs of Rachelle Cook; and Tiffany Powers, Pauline Magin, William Magin, and Brent Powers, individually.

3

- **ECF No. 113** by Estevan Carreon, Jane Carreon, Allen Gallaway, Kimberly Howard, Noel Lucero, Sherri Schwanz, Tami Lakey, and A.L., a minor by and through her Next Friend, Tami Lakey.

- **ECF No. 115** by Shaun Phan and Vui Nguyen, on behalf of wrongful death heirs of Binh Phan; Shaun Phan, individually and as Next Friend of minor A.P.; Vui Nguyen; Ngoc Pham; Dung Pham; Ngoan Pham; Vy Pham; Thanh Le; and Thinh Mai, individually and as Next Friends of minors A.M. and A.M.

- **ECF No. 141** by Ruth Sanborn.

- **ECF No. 146** by Laura Rojas.

All six motions assert the following arguments: (1) The Arbitration Agreement is unconstitutional; (2) Even if the Arbitration Agreement is valid, it does not apply to all defendants; (3) Even if the Arbitration Agreement is valid, BNSF has waived arbitration by participating in the state actions; and (4) The Court lacks subject-matter jurisdiction over this matter. (ECF Nos. 122, 123, 124, 125, 144, 145).

## **Legal Standard**

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff is entitled to relief by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all factual allegations and construes all reasonable inferences in the light most favorable to the nonmoving party. *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 607 (2019). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are

4

no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.* "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

"In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citation omitted). "The standard for a motion to dismiss under Rule 12(b)(6) applies equally to a motion to dismiss for lack of subject matter jurisdiction which asserts a facial challenge under Rule 12(b)(1)." *Gist v. Centene Mgmt. Co., LLC*, No. 4:21CV562 RLW, 2021 WL 3487096, at *2 (E.D. Mo. Aug. 9, 2021). In a factual attack—which occurs when a defendant challenges the veracity of the facts underpinning subject-matter jurisdiction—the Court may consider matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards. *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (citing *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990)).

## Discussion

### I. Validity and Applicability

Defendants argue that the Arbitration Agreement is invalid because Amtrak is a governmental agency. (ECF No. 123 at 3-4). According to Defendants, Amtrak's arbitration requirement violates the fundamental constitutional principles of due process, equal protection, access to the courts, trial by jury, right to travel, and separation of powers. *Id.* at 4-15. BNSF counters that the Court has no power to consider Defendants' validity and applicability arguments because the Arbitration Agreement delegates those issues to the arbitrator. (ECF No. 157 at 3).

5

Under Missouri law, "[p]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' including whether the parties have agreed to arbitrate a given controversy." *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 439 (Mo. banc 2020) (citing *State ex rel. Newberry v. Jackson*, 575 S.W.3d 471, 474 (Mo. banc 2019)). "These gateway questions may include determining the validity of the arbitration agreement itself." *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). "A delegation provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision." *Theroff*, 591 S.W.3d at 439 (cleaned up). If not challenged directly, courts will assume the provision is valid and gateway questions of arbitrability will go the arbitrator. *Shockley*, 929 F.3d at 1018 (citation omitted); *see also Rent-A-Ctr.*, 561 U.S. at 72 ("[U]nless [the Plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the Federal Arbitration Act] and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

Here, the Arbitration Agreement provides that an arbitrator "shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Arbitration Agreement, including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable." (ECF No. 9-6 at 58; ECF No. 9-7 at 59). Defendants argue that, despite this language, the Court must determine whether the Arbitration Agreement is valid before it can refer the matter to an arbitrator. (ECF No. 159 at 3).

Defendants misunderstand the precedent. The Eighth Circuit has explicitly held that parties may agree to arbitrate issues of validity. *See Shockley*, 929 F.3d at 1018. What is more, the

6

Supreme Court has held that district courts need not address validity unless a party specifically challenges the delegation provision. *See Rent-A-Ctr.*, 561 U.S. at 72.

Defendants' motions do not specifically challenge the delegation provision, which expressly applies to issues of validity and applicability. (ECF No. 9-6 at 58; ECF No. 9-7 at 59). The existence of the delegation clause, which the Court treats as valid and enforceable for the sake of this analysis, casts doubt on the Court's role in deciding whether the Arbitration Agreement is valid and applicable. *See Shockley*, 929 F.3d at 1018; *Rent-A-Ctr.*, 561 U.S. at 72.

At this stage, the Court must consider whether there is some insuperable bar to relief. *See Benton*, 524 F.3d at 870. In doing so, the Court must construe all reasonable inferences in the light most favorable to the nonmoving party. *Usenko*, 926 F.3d at 472 (8th Cir. 2019). Having reviewed Defendants' motions to dismiss—and in light of the delegation provision within the Arbitration Agreement—the Court cannot conclude at this early stage that BNSF has failed to state a plausible claim to relief against those defendants that purchased their own train tickets or had tickets purchased on their behalf. That is, BNSF has alleged sufficient factual matter, accepted as true, to show that that these individuals entered into the Arbitration Agreement with Amtrak and that BNSF, as the host railroad, may enforce the Agreement.

Even if the Court ignores the delegation provision, Defendants' validity arguments lack sufficient support. Defendants assert that the Arbitration Agreement violates several constitutional principles, but they fail to establish that Amtrak is acting as a governmental entity when it sells train tickets to passengers. Defendants also fail to show that governmental entities are constitutionally prohibited from enforcing arbitration agreements in this context.

Congress established Amtrak under the Rail Passenger Service Act of 1970 ("RPSA"), 45 U.S.C. §§ 501-644, in response to a sharp decline in ridership across the nation's passenger

7

railroads. *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 454 (1985). In its authorizing statute, Congress declared that Amtrak "will not be an agency or establishment of the United States Government." 45 U.S.C. § 541 (repealed 1994, current version at 49 U.S.C. § 24301). The RPSA "outlined a procedure under which private railroads could obtain relief from their passenger-service obligations by transferring those responsibilities to Amtrak[.]" *Id.* All but five private railroads availed themselves of the RPSA by entering into contracts, known as "Basic Agreements," with Amtrak. *Id.*

It is fair to say that "cases deciding when private action might be deemed that of the state have not been a model of consistency." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 375 (1995) (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632 (1991) (O'Connor, J., dissenting)). In *Lebron v. Nat'l R.R. Passenger Corp.*, which Defendants rely upon in their motions, the Supreme Court found that "[Amtrak] is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the Government by the Constitution." 513 U.S. at 375. Viewed in isolation, such a declaration would seem to settle the issue. But *Lebron* involved Amtrak's censorship of speech at Pennsylvania Station in New York City, not its engagement with customers in a commercial capacity. *Id.*

At issue in *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.* was a provision of the Basic Agreements pertaining to the rights of railroad employees to travel on Amtrak trains for free or at reduced rates. 470 U.S. 451, 456 (1985). Historically, the private railroads permitted current and retired employees and their dependents to travel on the employing line at a discount. *Id.* Many railroads had reciprocal agreements that extended these privileges to employees and dependents of other railroads. *Id.*

Relying on language in the Basic Agreements that gave it sole power to determine the extent of "transportation privileges," Amtrak decided to offer pass privileges only to employees of the railroads that operated trains for Amtrak and only for half-rate fares. *Id.* at 457. After much resistance from the railroads and their employees, Congress amended § 405(f) of the RPSA to restore free or reduced-rate transportation to all individuals who enjoyed such privileges when Amtrak took control of passenger rail service. *Id.* at 458. The amendment required the railroads to pay for "such costs as may be incurred" by Amtrak in providing pass privileges. *Id.* Congress ultimately decided that the railroads should reimburse Amtrak for pass privileges at a rate approximately equal to one-fourth the cost of a normal ticket fare. *Id.* at 460-61.

Five railroads brought suit against Amtrak arguing that § 405(f) violated the Due Process Clause of the Fifth Amendment. *Id.* at 460. They argued that the RPSA and Basic Agreements created a contractual relationship with the United States and that the amendments to § 405(f)—along with a 1972 assessment of incremental costs—unconstitutionally impaired the railroads' private contractual rights.

In deciding that the RPSA did not create a contractual relationship between the railroads and the United States, the Supreme Court explained that the RPSA "does not in any respect provide for the execution of a written contract *on behalf of the United States*." *Id.* at 467 (emphasis original). The Supreme Court also determined that the Basic Agreements were "between the railroads and *the nongovernmental corporation, Amtrak*. The United States was not a party to the Basic Agreements [and] the agreements do not implicate the United States." *Id.* at 470-71 (emphasis added).

While neither *Lebron* nor *Atchison* are wholly analogous to the present case, their holdings, taken together, support the conclusion that Amtrak's governmental status is anything but clear.

9

Defendants offer no case law to support their position that Amtrak is acting as a governmental entity when it sells tickets to passengers. Thus, the Court cannot conclude at this stage that the Arbitration Agreement is invalid simply because Amtrak was established by Congress.

## II. Standing

The delegation clause does not, however, apply to those defendants that never purchased a ticket and never boarded the train. "State contract law governs the ability of non-signatories to enforce arbitration provisions." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (cleaned up). Under Missouri law, "only parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract. To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." *Id.* (cleaned up). Thus, it follows that a party may not enforce a contract against an individual that is neither a party to the contract nor a third-party beneficiary. *See Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 982 (8th Cir. 2023) ("One can[not] be forced into arbitration by a contract to which one is a stranger[.]").

To establish Article III standing, a plaintiff must show: (i) it suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by the defendants, and (iii) the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To establish standing in this case, BNSF must show that each defendant caused an injury that this Court can rectify.

The Arbitration Agreement at issue applies to "claims Amtrak may have against You and claims You may have against Amtrak and any affiliates or related entities, or against any party to which Amtrak owes indemnity[.]" (ECF No. 102 at ¶ 57). The Agreement defines "You" as the

10

purchaser and "any individuals for whom [the purchaser] purchase[s] tickets, including, without limitation, family members, minor passengers, colleagues and companions[.]" *Id.* Thus, by its own language, the Agreement only applies to individuals who purchased tickets or had tickets purchased on their behalf.

BNSF's Second Amended Complaint rests on the assertion that Defendants injured BNSF by filing state court actions despite the existence of the Arbitration Agreement. BNSF does not allege, however, that defendants Brent Powers or William Magin purchased tickets or had tickets purchased on their behalf. That is, neither Powers nor Magin fall under the Agreement's definition of "You." Consequently, BNSF cannot establish that Powers or Magin are bound by the Arbitration Agreement or that they caused an injury in fact when they filed their state court claims. The Court will dismiss defendants Brent Powers and William Magin.[2] *See Burnett*, 75 F.4th at 983 (holding that the district court correctly concluded that "party-specific" language in the delegation clause at issue did not clearly and unmistakably delegate to an arbitrator threshold issues of arbitrability between nonparties); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) (holding that even though the arbitration agreement contained a delegation clause, the contract's limitation to "either you or we" meant there was not "clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories").

BNSF also lacks standing against defendant Pauline Magin to the extent BNSF sues her as the representative of "all Wrongful Death Beneficiaries for the death of Kim Holsapple." As Defendants point out, and a review of Missouri's online case management system supports, Daniel

---

[2] "Standing is, of course, a threshold issue in every case before a federal court: If a plaintiff lacks standing, he or she cannot invoke its jurisdiction." *Arkansas Right to Life State Pol. Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998) (citation omitted). To establish jurisdiction in a federal court, one must have suffered an "injury in fact[.]" *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Holsapple and David Towers—not Pauline Magin—brought a claim against BNSF on behalf of the wrongful death beneficiaries of Kim Holsapple. *See Holsapple, et al. v. BNSF Railway Company, et al.*, No. 22CH-CC00024 (9th Jud. Cir. 2022). Here, the alleged injury is the filing of the wrongful death action. Because Ms. Magin did not file that action, BNSF cannot reasonably contend that she caused the alleged injury or that an order from this Court against her as representative for the wrongful death beneficiaries of Ms. Holsapple would redress the alleged injury. Thus, the Court will also dismiss defendant Pauline Magin to the extent she is named "on behalf of all Wrongful Death Beneficiaries for the death of Kim Holsapple."

Defendants further argue that BNSF lacks standing against Shaun Phan and Vui Nguyen in their capacities as representatives for "all Wrongful Death Beneficiaries for the death of Binh Phan" because there are three other plaintiffs in the underlying state court action. Defendants assert that "[n]o effective court order could issue to achieve the result BNSF wants." (ECF No. 125 at 21). Defendants offer no support for this contention. Thus, the Court will not dismiss Shaun Phan and Vui Nguyen in their capacities as representatives for "all Wrongful Death Beneficiaries for the death of Binh Phan."

### III. Diversity Jurisdiction

Defendants argue that the Court lacks subject-matter jurisdiction over this matter because BNSF has not met the "amount-in-controversy" requirement of diversity jurisdiction. The diversity jurisdiction statute, 28 U.S.C. § 1332(a), provides that federal district courts will have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" The jurisdictional minimum is a requirement of federal subject-matter jurisdiction and is not waivable by the parties. 15A James Wm. Moore et al., *Moore's Federal Practice*, § 102.103 (3d ed. 2023).

"A complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017). Put another way, "[t]he district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

Having reviewed the Amended Complaint and the claims at issue in the underlying state matters, the Court finds that BNSF has alleged the jurisdictional amount in good faith. *See Peterson*, 867 F.3d at 995. A fact finder could legally conclude that the amount at issue for each defendant exceeds $75,000. *See Kopp*, 280 F.3d at 885. BNSF has sufficiently established the Court's diversity jurisdiction.

### IV.  Waiver

Defendants next argue that BNSF has waived its right to enforce the Arbitration Agreement because BNSF did not invoke the right at the "earliest feasible opportunity." Defendants assert that BNSF participated substantively in the underlying state cases by: (1) opposing Amtrak's joinder as a third-party defendant, (2) supporting MS Contracting, LLC's motion to stay pending the National Transportation Safety Board's ("NTSB") investigation, (3) engaging in discovery, and (4) offering to waive arbitration if the plaintiffs in *Nick Cook, et al. v. BNSF Railway Company, et al.* would agree to litigate in federal court. BNSF counters that the Arbitration Agreement's delegation clause applies to waiver determinations. BNSF further argues that it has consistently invoked its right to arbitrate in the underlying cases and has participated in those cases only the extent required by the state court.

13

For the reasons discussed in Part I, the Court agrees with BNSF that the delegation clause governs matters of waiver. The Arbitration Agreement gives the arbitrator exclusive authority over all disputes relating to validity, applicability, enforceability, unconscionability, voidability, and *waiver*. (ECF No. 9-6 at 58; ECF No. 9-7 at 59) (emphasis added).

Even if the delegation provision did not apply to issues of waiver, the Court doubts that BNSF has waived its right to invoke the Arbitration Agreement. A party waives its right to arbitration if it "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (quoting *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007)). To safeguard its right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Id*. (citation and internal quotation marks omitted).

A review of the underlying state court matters shows that BNSF has consistently invoked the Arbitration Agreement. The records demonstrate that BNSF did so without undue delay. For example, in case number 22CH-CC00021, the plaintiffs served BNSF on July 28, 2022. *Powers, et al. v. MS Contracting, LLC, et al.*, No. 22CH-CC00021 (9th Jud. Cir. 2022). In its answer dated August 15, 2022, BNSF stated: "Plaintiffs' claims are barred by and subject to a mandatory arbitration provision included within the Terms and Conditions of the Amtrak passenger tickets of Rachelle Cook, Pauline Magin, and Tiffany Powers." *Id.* BNSF also filed the present action on September 20, 2022, prior to engaging in any discovery in the state case. With this background, the Court is not persuaded that BNSF has waived its right to enforce the Arbitration Agreement.

14

**Conclusion**

For the foregoing reasons, the Court will dismiss Brent Powers, William Magin, and Pauline Magin, to the extent she is sued as representative for the wrongful death beneficiaries of Kim Holsapple. The Court will deny Defendants' motions to dismiss in all other respects. To be clear, the Court does not find that the Arbitration Agreement is valid or applicable to all remaining defendants. At issue here is only whether BNSF has alleged sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059 at 1063. The Court finds that it has against the remaining defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Pauline Magin, Angelika Salazar, and N.N.'s motion to dismiss is **GRANTED** as to Pauline Magin in her capacity as representative for the wrongful death beneficiaries of Kim Holsapple. The motion is **DENIED** in all other respects. (ECF No. 109).

**IT IS FURTHER ORDERED** that the remaining motions to dismiss are **DENIED** in their entireties. (ECF Nos. 111, 113, 115, 141, 146).

**IT IS FURTHER ORDERED** that Defendants' motion for oral argument is **DENIED** as moot. (ECF No. 160).

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

*[signature: Ronnie L. White]*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 1st day of May, 2024.