# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-CV-68 HEA |
| | ) | |
| PAULINE MAGIN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-CV-41 HEA |
| | ) | |
| PIERSON BEAULIEU, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on three separate motions to dismiss filed in *BNSF Railway Company v. Beaulieu, et al.*, Case No. 2:21-CV-41 HEA ("*Beaulieu*"). [*Beaulieu* Dkt., Docs. 45, 47, 67]. Defendants Todd Covington, Joseph Disciacca, and Wendy Burkett ("Covington Defendants") move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). [*Beaulieu* Dkt., Doc. 45]. Defendants Susan Juarez-Mora, Susan Juarez-Mora as next friend of minor A.J.M., Pierson Beaulieu, Nicholas DeHoyos, and Dustin Boyd, ("Juarez-Mora

Defendants") also moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). [*Beaulieu* Dkt., Doc. 47]. Defendants Jonathan Awe, Jonathan Awe as next friend of minor I.A., Elijah Awe, Julian Boardman, and Harrison Boardman ("Awe Defendants") move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [*Beaulieu* Dkt., Doc. 67]. Plaintiff BNSF Railway Company ("BNSF") opposes the motions, which are fully briefed and ripe for review. For the reasons set forth below, the motions to dismiss are denied.

## I.    Facts and Background

These two consolidated cases arise from a train derailment involving a National Railroad Passenger Corporation ("Amtrak") train that occurred on June 27, 2022, on BNSF's track near Mendon, Missouri. A number of individuals, who were passengers or the heirs of passengers, brought lawsuits against BNSF in state court asserting state law tort claims. It is BNSF's position that many, if not all, of the state law claims are subject to an arbitration agreement, and it seeks to compel arbitration. However, BNSF did not move to compel arbitration in state court, and it did not remove the state court cases to federal court. Instead, BNSF filed in this District two separate lawsuits involving different sets of plaintiffs from the state court lawsuits. In these two suits, BNSF seeks to compel arbitration of the claims in the state court suits pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. The state court lawsuits remain pending in state court.

2

## A.      The *Magin* Lawsuit

In *BNSF Railway Company v. Magin, et al.*, Case No. 2:22-cv-00068 HEA ("*Magin*"), BNSF filed suit on September 20, 2022, against 32 individuals (the "*Magin* Defendants") who had filed 8 separate lawsuits in state court.[1] [*Magin* Dkt., Doc. 102]. BNSF alleges in its Second Amended Complaint (the "*Magin* Complaint") that the *Magin* Defendants all entered into Amtrak's Arbitration Agreement when they either purchased train tickets or had tickets purchases on their behalf. BNSF alleges that the *Magin* Defendants' claims in state court are, therefore, subject to Amtrak's Arbitration Agreement, to which BNSF contends it is a third-party beneficiary. In the *Magin* Complaint, BNSF seeks an order compelling arbitration of these defendants' claims pursuant to 9 U.S.C. § 4 of the FAA. BNSF also requests that the Court stay the *Magin* Defendants' pending state court actions and enjoin the *Magin* Defendants from pursuing their state court actions while the parties arbitrate their claims. [*Id.* at 21-24].

In response to the BNSF's suit, the *Magin* Defendants moved to dismiss, arguing among other things that: (1) the Amtrak Arbitration Agreement is invalid because Amtrak is a government agency and the Amtrak Arbitration Agreement violated their constitutional rights; (2) even if the Amtrak Arbitration Agreement  is

---

[1] The state court actions in *Magin* include Nos. 22CH-00021, 22CH-CC00022, 22CH-CC00024, 22CH-CC00026, 22CH-CC00029, 22CH-CC00038, 23CH-CC00004, and 23CH-CC00014. [*Magin* Dkt., Doc. 102 at 12-13].

3

valid, it did not apply to all of the *Magin* Defendants; (3) BNSF waived arbitration by participating in the state court actions; and (4) the Court lacked subject matter jurisdiction because BNSF had not sufficiently alleged the amount in controversy to invoke diversity jurisdiction. [*Magin* Dkt., Docs. 109, 111, 113, 115, 141, 146].

On May 1, 2024, the Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri, issued a Memorandum and Order in which he granted in part and denied in part the motions to dismiss.[2]  Judge White granted the motion to dismiss for lack of standing as to three *Magin* Defendants, who had not purchased tickets or had tickets purchased on their behalf. Judge White denied the motions to dismiss in all other respects. [*Magin* Dkt., Doc. 166].

In addressing the *Magin* Defendants' arguments regarding the validity and applicability of the Amtrak Arbitration Agreement, Judge White observed that the Arbitration Agreement contains a delegation provision that expressly committed issues of validity and applicability to an arbitrator, and the *Magin* Defendants had not specifically challenged the delegation provision. [*Id.* at 6-7]. Treating the delegation provision as valid and enforceable for the sake of ruling on the *Magin* Defendants' Rule 12(b)(6) motions, Judge White declined to determine whether the

---

[2]Judge White retired from the bench on July 31, 2024. In anticipation of his retirement, *Magin* was reassigned to the undersigned in June 2024. [*Magin* Dkt., Doc. 184].

Amtrak Arbitration Agreement was valid and constitutional. [*Id.* at 7]. Judge White determined that he could not conclude at the motion-to-dismiss stage that BNSF had failed to state a plausible claim to relief against the *Magin* Defendants who had purchased their own train tickets or had tickets purchased on their behalf. [*Id.*]. In his decision, Judge White wrote the following:

> [T]he Court must construe all reasonable inferences in the light most favorable to the nonmoving party. *Usenko*[ *v. MEMC LLC*], 926 F.3d [468,] 472 (8th Cir. 2019)]. Having reviewed Defendants' motions to dismiss—and in light of the delegation provision within the Arbitration Agreement—the Court cannot conclude at this early stage that BNSF has failed to state a plausible claim to relief against those defendants that purchased their own train tickets or had tickets purchased on their behalf. That is, BNSF has alleged sufficient factual matter, accepted as true, to show that that these individuals entered into the Arbitration Agreement with Amtrak and that BNSF, as the host railroad, may enforce the Agreement.

[*Id.*]

Alternatively, Judge White found that even if the Amtrak Arbitration Agreement did not contain a delegation provision, the *Magin* Defendants' validity arguments lacked sufficient support because they had failed to establish that Amtrack was acting as a governmental entity when it sold train tickets to passengers. Judge White concluded that the *Magin* Defendants failed to show "that governmental entities are constitutionally prohibited from enforcing arbitration agreements in this context." [*Id.* at 7-10].

Finally, Judge White found that BNSF sufficiently alleged the amount in controversy to establish diversity jurisdiction, and he was not persuaded that BNSF

had waived its right to enforce the Amtrak Arbitration Agreement. [*Id.* at 12-14].
The court determined that BNSF lacked standing against two *Magin* Defendants
because they had neither purchased tickets from Amtrak nor had tickets purchased
on their behalf, and thus were not bound by the Amtrak Arbitration Agreement.
BNSF lacked standing against a third *Magin* Defendant because she had not filed a
cause of action against BNSF. [*Id.* at 10-12].

## B.   The *Beaulieu* Lawsuit

On May 28, 2024, BNSF filed suit in this District against 13 additional
individuals. Those individuals are plaintiffs in 6 different lawsuits against the
railroad in state court.[3] [*Beaulieu* Dkt., Doc. 1]. Like it alleged in *Magin,* in *Beaulieu*,
BNSF also alleges that the plaintiffs in these state court cases (the "*Beaulieu*
Defendants") all entered into Amtrak's Arbitration Agreement when they either
purchased train tickets or had tickets purchases on their behalf. [*Beaulieu* Dkt., Doc.
1]. Therefore, according to BNSF, the *Beaulieu* Defendants' claims in their state
court cases are subject to arbitration. In other words, BNSF seeks to compel

---

[3]These state court actions include the following cases: Nos. 22CH-CC00033,
23CH-CC00029, 24CH-CCCC00013, 24CH-CC00014, 24CH-CC00015, and
24CH-CC00016. [*Beaulieu* Dkt., Doc. 1 at 4 nn.2-4, 5 nn.7-8, 6 n.10].

arbitration under the FAA against the *Beaulieu* Defendants based on the same Amtrak Arbitration Agreement at issue in *Magin*.[4] [*Id.* at 15-17].

BNSF moved to consolidate *Magin* and *Beaulieu*. [*Magin* Dkt., Doc. 194; *Beaulieu* Dkt., Doc. 63]. After careful review of the parties' briefs and the record in both cases, the Court found that the cases involved common issues of law and fact and were appropriate for consolidation. [*Magin* Dkt., Doc. 200; *Beaulieu* Dkt., Doc. 72].

The matter is now before the Court on motions to dismiss filed in *Beaulieu*. In response to the *Beaulieu* Complaint, the Covington Defendants and the Juarez-Mora Defendants filed substantively identical motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). They argue that the Court lacks subject matter jurisdiction in this case because the Amtrack Arbitration Agreement at issue is invalid. [*Beaulieu* Dkt., Docs. 45, 47]. The Covington Defendants and the Juarez-Mora Defendants contend that the Amtrack Arbitration Agreement is invalid because Amtrak is a government agency, and the Amtrack Arbitration Agreement violates their constitutional rights to trial by jury, to travel, and to access the courts, as well as the

---

[4]BNSF did not remove any of the state court actions that they are challenging in *Magin* and *Beaulieu*. Therefore, all of the state court actions are currently pending. Additionally, BNSF has never moved to compel arbitration in either of these consolidated federal cases, despite that being the appropriate mechanism to compel arbitration. *See Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) ("Rule 12(b)(6) or Rule 56 motions are the appropriate means for parties seeking to compel arbitration.").

constitutional principle of separation of powers. [*Beaulieu* Dkt., Doc. 46 at 2-7; Doc. 48 at 2-7]. They also contend that the Amtrack Arbitration Agreement is invalid because they could have purchased their tickets without reviewing the agreement, and if they never reviewed the agreement, they could not have agreed to it, although they do not rely on affidavits or any other evidentiary material in support of this argument. [*Beaulieu* Dkt., Doc. 46 at 7-8; Doc. 48 at 7-8]. The Covington Defendants and the Juarez-Mora Defendants also contend that the language of the Amtrack Arbitration Agreement is ambiguous as to whether customers may pursue their claims in court, and that Amtrack Arbitration Agreement impermissibly allows those who purchased tickets on behalf of others to accept the Amtrack Arbitration Agreement on behalf of the people for whom the tickets were purchased. [*Beaulieu* Dkt., Docs. 46 at 8-9; Doc. 48 at 8-9]. Importantly, like the *Magin* Defendants, the Covington Defendants and the Juarez-Mora Defendants do not challenge the delegation provision contained in the Amtrack Arbitration Agreement. Finally, they argue that BNSF waived arbitration by participating in the state court actions. [*Beaulieu* Dkt., Doc. 46 at 12-14; Doc. 48 at 12-14].

The Awe Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [*Beaulieu* Dkt., Doc. 67-1]. In their motion, the Awe Defendants largely make the same arguments regarding the validity of the Amtrack Arbitration Agreement that the Covington Defendants and the Juarez-Mora

8

Defendants make in their motions to dismiss, but the Awe Defendants state that their arguments regarding the validity of the Amtrack Arbitration Agreement also apply to the delegation provision. [*Id.*].

BNSF opposes the three motions to dismiss and urges the Court to follow Judge White's reasoning in his May 1, 2024 Memorandum and Order.[5] [*Beaulieu* Dkt., Doc. 70].

## II.    <u>Legal Standard</u>

The Covington Defendants and the Juarez-Mora Defendants move to dismiss BNSF's claims pursuant Rule 12(b)(1) for lack of subject matter jurisdiction. The Supreme Court has stated that while the FAA allows a party to an arbitration

---

[5] BNSF also argues that the doctrine of the law of the case prevents the Court from revisiting issues that Judge White decided in the May 1, 2024 Memorandum and Order. [*Beaulieu* Dkt., Doc. 70 at 2-3]. The Court is not persuaded that the doctrine of the law of the case applies here, as the May 1, 2024 Memorandum and Order was entered in *Magin*, which is a separate case that involves different defendants than those involved here. *See UniGroup, Inc. v. Winokur*, 45 F.3d 1208, 1211 (8th Cir. 1995) ("The doctrine of the law of the case . . . is a doctrine of discretion and provides that when a court decides a rule of law, that decision should govern the same issues in subsequent stages in the same case.") (citations omitted). Further, the doctrine "does not apply to interlocutory orders . . . for they can always be reconsidered and modified by a district court prior to entry of a final judgment." *First Union Nat'l Bank v. Pictet Overseas Tr. Corp., Ltd.*, 477 F.3d 616, 620 (8th Cir. 2007); *see also Bradford v. Huckabee*, 330 F.3d 1038, 1040 n. 3 (8th Cir. 2003) ("The denial of a motion to dismiss is not usually immediately appealable because it is not a final order." (citing *Pendleton v. St. Louis County*, 178 F.3d 1007, 1010 (8th Cir. 1999))).

agreement to seek relief from a federal court, "the [FAA]'s authorization of a petition does not itself create jurisdiction." *Badgerow v. Walters*, 596 U.S. 1, 4 (2022). Federal courts must have an "'independent jurisdictional basis' to resolve the matter." *Id.* (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)); *see also Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) (explaining that the FAA "'bestow[s] no jurisdiction on federal courts but, rather, requir[es] [for access to a federal forum] an independent jurisdictional basis' over the parties' dispute") (alterations in original) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008)). For actions seeking to compel arbitration pursuant to Section 4, the Supreme Court has instructed that district courts are to "look through" the action in federal court to the parties' "underlying substantive controversy" to determine whether there is federal subject matter jurisdiction. *Vaden*, 556 U.S. at 62 (citing 9 U.S.C. § 4, which states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement*, would have jurisdiction under title 28, in a civil action. . . .") (emphasis added). In other words, there must be an independent basis for jurisdiction, such as federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332.

10

It is apparent from the Covington Defendants' and the Juarez-Mora Defendants' filings that they are not challenging the Court's jurisdiction. Instead, they are challenging the validity of the Arbitration Agreement, which is a separate inquiry entirely. *See Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) ("An arbitration agreement alone, without other statutory or binding jurisdictional limitations, does not divest the federal courts of subject matter jurisdiction." (citing *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880-81 (8th Cir. 2017))); *Benkelman*, 867 F.3d at 880-81 (holding that "an arbitration agreement has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction"). In fact, if the Court lacked subject matter jurisdiction, it would lack the authority to make any determination regarding the validity of the Amtrak Arbitration Agreement.

In the *Beaulieu* Complaint, BNSF asserts that this Court has diversity jurisdiction over this dispute because the parties are diverse and the amount in controversy exceeds $75,000, which the Covington Defendants and the Juarez-Mora Defendants do not challenge. Thus, the Court will construe the Covington Defendants' and the Juarez-Mora Defendants' motions to dismiss, which challenge the validity of the Amtrak Arbitration Agreement and BNSF's supposed waiver of its right to arbitrate, as Rule 12(b)(6) motions to dismiss for failure to state a claim.

11

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When analyzing a motion to dismiss, "a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). However, courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). The complaint must allege sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 at 235-236 (3d ed. 2004)). "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## III.   Allegations in the *Bealieu* Complaint

### A.   The Amtrak Arbitration Agreement

According to the *Beaulieu* Complaint, to purchase a ticket from Amtrak, "whether on the website, mobile website, or app," customers must accept Amtrak's terms and conditions, which include an Amtrack Arbitration Agreement. [*Beaulieu*

12

Dkt., Doc. 1 at 9]. Before purchasing a ticket online, passengers must click a box acknowledging that they have "read and agree to the terms and conditions, including the binding arbitration agreement. . . ." [*Id.*]. BNSF alleges that the Covington Defendants and Juarez-Mora Defendants all purchased train tickets through Amtrak's website, mobile website, or app, or authorized another person to purchase tickets on their behalf through Amtrak's website, mobile website, or app. As for the Awe Defendants, BNSF alleges that they were part of a group that utilized Amtrak's "group booking" to purchase tickets by phone through a representative. BNSF alleges that the group's representative was mailed a letter stating that transportation on Amtrak was subject to the terms and conditions printed on the tickets and ticket jackets, and that the paper tickets and ticket jackets that were mailed to the Awe Defendants stated, "This ticket is a contract of carriage between Amtrak and the ticket holder which is subject to specific terms and conditions. Those terms and conditions are available for inspection at Amtrak ticket counters or on the Amtrak Web site at www.amtrak.com, or may be requested by calling 1-800-USA-RAIL." [*Id.*]. According to the *Beaulieu* Complaint, all of the *Beaulieu* Defendants used Amtrak tickets to board the train, and they all agreed to Amtrak's terms and conditions of travel.

BNSF alleges that within Amtrak's terms and condition, there is a notice that states:

13

These terms and conditions contain a binding Arbitration Agreement below. Please read the Arbitration Agreement carefully because it applies mutually to You and Amtrak and requires that you resolve claims and disputes with Amtrak on an individual basis through arbitration and not by way of court or jury trial. By purchasing a ticket for travel on Amtrak, You are agreeing to these terms and conditions and agreeing to the Arbitration Agreement

[*Id.* at 10.]

And according to BNSF, the Amtrak Arbitration Agreement states the following:

This Arbitration Agreement is intended to be as broad as legally permissible, and, except as it otherwise provides, applies to all claims, disputes, or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration. . . . [T]his Arbitration Agreement applies, without limitation, to claims Amtrak may have against You and claims You may have against Amtrak and any affiliates or related entities, or against any party to which Amtrak owes indemnity (which party may also enforce this Agreement), including without limitation any host railroad, based upon or related to: these Terms and Conditions, breach of contract, tort claims, common law claims, Your relationship with Amtrak, tickets, services and accommodations provided by Amtrak, carriage on Amtrak trains and equipment, any personal injuries (including, but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages arising out of or related to any personal injury), and any claims for discrimination and failure to accommodate, which shall be decided by a single arbitrator through binding arbitration and not by a judge or jury.

[*Id.*]. The Amtrak Arbitration Agreement defines "You" as the purchaser and "any individuals for whom [the purchaser] purchase[s] tickets, including, without

14

limitation, family members, minor passengers, colleagues and companions. . . ."

[*Id.*]. The Amtrak Arbitration Agreement also contains a delegation provision, which

states the following:

> [T]he arbitrator, and not any federal, state, or local court or agency,
> shall have exclusive authority to resolve any dispute relating to the
> validity, applicability, enforceability, unconscionability or waiver of
> this Arbitration Agreement, including, but not limited to any claim that
> all or any part of this Arbitration Agreement is void or voidable.[6]

[*Beaulieu* Dkt., Doc. 2-6 at 58; Doc. 2-7 at 59]. Additionally, the Arbitration

Agreement specifies that it "is governed by the Federal Arbitration Act ("FAA") and

evidences a transaction involving commerce. The arbitration will be conducted

before a single arbitrator under the Consumer Arbitration Rules of the American

Arbitration Association ("AAA"), which are available at the AAA website

(www.adr.org)." [*Beaulieu* Dkt., Doc. 2-6 at 58; Doc. 2-7 at 59].

The Amtrak Arbitration Agreement further states that "this Arbitration

Agreement applies, without limitation, to claims Amtrak may have against You and

claims You may have against Amtrak and any affiliates or related entities, or against

any party to which Amtrak owes indemnity (which party may also enforce this

---

[6] "A copy of a written instrument that is an exhibit to a pleading is a part of
the pleading for all purposes." Fed. R. Civ. P. 10(c). *See also Quinn v. Ocwen Fed.
Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006) ("[W]ritten instruments attached to
the complaint become part of it for all purposes. For that reason, a court ruling on a
motion to dismiss under Rule 12(b)(6) may consider material attached to the
complaint.").

15

Agreement), including without limitation any host railroad . . ." [*Beaulieu* Dkt., Doc. 2-6 at 57-58; Doc. 2-7 at 59]. BNSF alleges that it is entitled to enforce the Amtrak Arbitration Agreement under this indemnity provision. [*Beaulieu* Dkt., Doc. 1 at 11].

## IV.    **Discussion**

### A.    **Arbitration Agreements and the FAA**

BNSF filed suit seeking relief under the FAA. The FAA establishes "a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Section 2 of the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. In other words, the FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Under the FAA, courts "must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

"Arbitration is a matter of contract and consent," and "disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024); *see also Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). But parties can form multiple levels of agreements

concerning arbitration. Parties can agree to send the merits of a dispute to an arbitrator, and they can also agree by contract to a delegation provision, whereby an arbitrator, rather than a court, will resolve threshold questions of arbitrability. *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019). "These gateway questions may include determining the validity of the arbitration agreement itself." *Id.* (citing *Rent-A-Center*, 561 U.S. at 69). "[A] delegation provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision." *Id.* (alteration in original) (quoting *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 50 (Mo. banc 2017)). "If not challenged directly, [the Eighth Circuit] presume[s] the delegation provision is valid, and, as a result, antecedent questions such as an arbitration contract's validity will go to the arbitrator." *Id.* (citing *Pinkerton*, 531 S.W.3d at 50).

## 1. Whether the Complaint Sufficiently Alleges an Arbitration Agreement Was Formed

While BNSF has not filed a motion to compel arbitration and the ultimate issue in this case is not currently before the Court, a district court's role under the FAA is limited to whether the parties agreed to arbitration and whether the agreement encompasses the dispute at issue. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). Thus, the first issue before the Court is whether the *Beaulieu* Complaint sufficiently alleges the existence of an arbitration agreement

17

between BNSF and the defendants in this case. Like the Covington Defendants and the Juarez-Mora Defendants, the Awe Defendants challenge the validity of the Amtrak Arbitration Agreement, but the Awe Defendants do not argue that BNSF failed to adequately allege that the parties formed a contract when they purchased and subsequently used their train tickets. The Covington Defendants and the Juarez-Mora Defendants, however, do challenge BNSF's allegations that an agreement was formed. The Court will, therefore, address the Covington Defendants' and Juarez-Mora Defendants' contract-formation arguments before turning to the validity arguments made by all of the *Beaulieu* Defendants.

First, the Covington Defendants and the Juarez-Mora Defendants argue that they did not accept Amtrak's terms and conditions because they could have purchased their tickets without reviewing the agreement, and if they never reviewed the agreement, they could not have agreed to it. At this stage of the proceeding, however, the issue is not whether the parties actually entered into the agreement, but whether the *Beaulieu* Complaint sufficiently alleged that the parties entered into an agreement.

The Covington Defendants and the Juarez-Mora Defendants agree that Missouri law governs this dispute. *See Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001) ("State contract law governs whether an arbitration agreement is valid."). "Missouri law requires (1) an offer, (2) acceptance, and

18

(3) consideration to form a valid and enforceable contract." *Shockley*, 929 F.3d at 1017 (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014)). Missouri courts "apply traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement." *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009); *see also Perficient, Inc. v. Palfery*, No. 4:20-CV-618-MTS, 2022 WL 1102117, *5 (E.D. Mo. Apr. 13, 2022) (noting that "Missouri courts and federal courts applying Missouri law have held 'click-to-accept' types of online agreements . . . are enforceable"). "An offer is made when the offeree—the person receiving the offer—would 'reasonably believe that an offer has been made.'" *Shockley*, 929 F.3d at 1017 (quoting *Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 287 (Mo. Ct. App. 2016)). "A valid offer will include the ability to accept through some affirmative words or action." *Id.* (citing *Jackson*, 497 S.W.3d at 290). "An acceptance is present when the offeree signifies assent to the terms of the offer in a 'positive and unambiguous' manner." *Id.* (quoting *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 545 (Mo. Ct. App. 2011)). "Together, offer and acceptance constitute mutual assent." *Id.* (citing *Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 528 (Mo. Ct. App. 2008)). "Third, an agreement must have an exchange of consideration: a promise to do something or refrain from doing something, or the transfer of something of value to the other party." *Id.* at 1017-18 (citing *Baker*, 450 S.W.3d at 774).

Here, BNSF has adequately alleged that the Covington Defendants and the Juarez-Mora Defendants accepted the terms and conditions of the Amtrak Arbitration Agreement. Specifically, the *Beaulieu* Complaint alleges that the Covington Defendants and the Juarez-Mora Defendants all purchased train tickets through Amtrak's website, mobile website, or app, or authorized another person to purchase tickets on their behalf through Amtrak's website, mobile website, or app. [*Beaulieu* Dkt., Doc. 1 at 9]. The *Beaulieu* Complaint further alleges that the Covington Defendants and the Juarez-Mora Defendants clicked a box acknowledging that they "read and agree[d] to the terms and conditions, including the binding arbitration agreement" and that "Defendants respectively agreed to Version 2.9.15 or Version 2.9.16 of Amtrak's Terms and Conditions." [*Id.* at 9-10]. Whether the Covington Defendants and the Juarez-Mora Defendants actually read the terms and conditions is irrelevant. *See Midwest Printing, Inc. v. AM Int'l, Inc.*, 108 F.3d 168, 170 (8th Cir. 1997) ("Under Missouri law, 'a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing of fraud.'" (quoting *United States for Use of Bussen Quarries, Inc. v. Thomas*, 938 F.2d 831, 833 (8th Cir. 1991))); *Major*, 302 S.W.3d at 229 ("Assent is manifested on clickwrap sites, usually by clicking a box or a button (*e.g.*, 'I Agree').").

Second, the Covington Defendants and the Juarez-Mora Defendants contend that the following portion of the Amtrack Arbitration Agreement creates ambiguity as to whether customers may pursue their claims in court:

**We support our customers' right to seek outside legal help as a last resort.**

In rare cases, Amtrak cannot reach a resolution with a customer that feels fair to both sides. In these instances, Amtrak recognizes that our customers may want to pursue a remedy through legal channels. We understand and agree that you have the right to have your legal dispute decided by a neutral trier of fact.

[*Beaulieu* Dkt., Doc. 2-6 at 59; Doc. 2-7 at 60]. The Covington Defendants and the Juarez-Mora Defendants assert that the "legal channels" and "neutral trier of fact" language could be interpreted to mean that "a customer may seek a trial before the prototypical neutral factfinder of a judge or jury." [*Beaulieu* Dkt., Doc. 46 at 8-9; Doc. 48 at 8-9].

When considered in context, it is clear that the challenged section is not suggesting that a customer may seek a jury or bench trial. *See Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658 (Mo. Ct. App. 2001) ("To determine whether a contract is ambiguous, we consider the whole document and give the words used their natural and ordinary meaning." (citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973))). The paragraph immediately preceding the challenged section states that Amtrak successfully resolves over 95 percent of complaints directly with its customers. The

21

challenged section then recognizes that in those "rare cases" where Amtrak cannot resolve a complaint directly with a customer (less than five percent of complaints), the customer has the right to have his or her "legal dispute decided by a neutral trier of fact." Then, the sentence immediately following the challenged section explains that Amtrak "**believe[s] arbitration is the fastest and best way for [its] customers to resolve legal disputes.**" [*Beaulieu* Dkt., Doc. 2-6 at 59; Doc. 2-7 at 60]. The Arbitration Agreement goes on to explain that the trier of fact will be a "neutral profession arbitrator, mutually selected by the parties," who "makes all pertinent decisions about the case." [*Beaulieu* Dkt., Doc. 2-6 at 61; Doc. 2-7 at 62]. Further, according to the *Beaulieu* Complaint, the Amtrak Arbitration Agreement clearly states that it "applies to **all claims**, disputes, or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration." [*Beaulieu* Dkt., Doc. 1 at 10]. And the delegation provision unambiguously provides that "the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Arbitration Agreement. . . ." [*Beaulieu* Dkt., Doc. 2-6 at 58; Doc. 2-7 at 59]. Thus, the Court finds that the challenged provision is unambiguous and consistent with the Arbitration Agreement as a whole. *See Helterbrand*, 48 S.W.3d at 658; *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003) ("A contract

is ambiguous only if its terms are susceptible to fair and honest differences." (citing *Helterbrand*, 48 S.W.3d at 658)).

Third, the Covington Defendants and Juarez-Mora Defendants take issue with the provision of the Amtrack Arbitration Agreement defining "You" as the ticket purchaser and "any individuals for whom [the purchaser] purchase[s] tickets, including, without limitation, family members, minor passengers, colleagues and companions. . . ." Specifically, they contend that there is no evidence or proper allegations that any ticket purchaser had authorization to agree to arbitration on their behalf.

Again, at this early stage, the issue is not whether the Covington Defendants and Juarez-Mora Defendants actually authorized someone else to purchase train tickets on their behalf, but whether BNSF has sufficiently alleged that the parties entered into an agreement. The Covington Defendants and Juarez-Mora Defendants do not specify which of them were not sufficiently alleged to have given someone else authorization to purchase tickets on their behalf, but the *Beaulieu* Complaint alleges that the three people who purchased tickets on behalf of Boyd, Covington, Juarez-Mora, and A.J.M. were authorized to do so.[7] [*Beaulieu* Dkt., Doc. 1 at 12-14]. Because Missouri permits authorized agents to contract in the name of their

---

[7] BNSF alleges that the rest of the Covington Defendants and Juarez-Mora Defendants purchased tickets for themselves. [*Beaulieu* Dkt., Doc. 1 at 12-14].

principals, the allegations in the *Beaulieu* Complaint sufficiently state claims against Boyd, Covington, Juarez-Mora, and A.J.M. *See, e.g.*, *Parshall v. Buetzer*, 195 S.W.3d 515, 519 ("[A]n insurance agent, acting within the scope of his authority, actual or apparent, may bind an insurance company by an oral contract of insurance." (quoting *Voss v. Am. Mut. Liab. Ins. Co.*, 341 S.W.2d 270, 275 (Mo. Ct. App. 1960))).

## 2. Validity

All of the *Beaulieu* Defendants challenge the validity of the Amtrack Arbitration Agreement, arguing that Amtrak is a governmental agency and that the Arbitration Agreement violates their constitutional rights. BNSF urges the Court to follow Judge White's reasoning in the May 1, 2024 order, contending that the Court may not consider the *Beaulieu* Defendants' arguments regarding the validity and enforceability of the Arbitration Agreement because the delegation provision committed questions of arbitrability to an arbitrator.

Like the defendants in *Magin*, here, the Covington Defendants and Juarez-Mora Defendants do not directly challenge the delegation provision, which expressly applies to issues of "validity, applicability, enforceability, unconscionability[, and] waiver" of the Arbitration Agreement, "including . . . any claim that all or any part of th[e] Arbitration Agreement is void or voidable." [*Beaulieu* Dkt., Doc. 2-6 at 58; Doc. 2-7 at 59]. Instead, they contend that the Amtrak

24

Arbitration Agreement as a whole is invalid because it violates their constitutional rights. *See Shockley*, 929 F.3d at 1018 ("If not challenged directly, we presume the delegation provision is valid, and, as a result, antecedent questions such as an arbitration contract's validity will go to the arbitrator." (citing *Pinkerton*, 531 S.W.3d at 50)).

The Awe Defendants claim to specifically challenge the delegation provision in their motion to dismiss, but their arguments are substantively identical to their arguments against the Arbitration Agreement as a whole, and such challenges have been routinely rejected by Missouri courts. *See, e.g.*, *Soars*, 563 S.W.3d at 115-17 (holding no direct challenge where arguments against delegation provision were expressly identical to arguments against arbitration agreement as a whole); *Latenser v. Tarmac Int'l, Inc.*, 549 S.W.3d 461, 464 (Mo. Ct. App. 2018) (holding no direct challenge to delegation provision where challenges were to arbitration agreement as a whole); *Pinkerton v. Fahnestock*, 531 S.W.3d 36, 51 (Mo. banc 2017) (holding challenges to arbitration agreement as a whole did not constitute specific challenges to delegation provision).

While the Awe Defendants primarily rely on cases from the Supreme Court of the United States and Eighth Circuit cases applying Missouri law in their briefing, the Court notes that the Awe Defendants assert for the first time in their reply brief that Wisconsin contract law applies, quoting a single Wisconsin case that involves

25

an arbitration agreement. [*Magin* Dkt., Doc. 201 at 5-6] ("'Arbitrators derive their authority only from the parties' advance agreement that they will submit such grievances to arbitration' and thus, parties cannot be 'required to submit any dispute to arbitration unless [they have] agreed to do so.'" (quoting *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 920 N.W.2d 767, 779 (Wis. 2017))). Although the Court need not consider arguments raised for the first time in a reply brief, *Gatewood v. City of O'Fallon*, 70 F.4th 1076, 1080 (8th Cir. 2023), the Court will briefly address the issue, as the relevant law is substantively the same in Missouri and Wisconsin.

Like in Missouri, the elements of a contract in Wisconsin are offer, acceptance and consideration, *In re F.T.R.*, 833 N.W.2d 634, 649 (Wis. 2013), and under Wisconsin law, "[p]arties may contract broadly and agree to arbitrate, even the issue of arbitrability," *Midwest Neurosciences*, 920 N.W.2d at 779 (citing *Mortimore v. Merge Techs. Inc.*, 824 N.W.2d 155, 160 (Wis. Ct. App. 2012)). In Wisconsin, when "determining whether a dispute is arbitrable," a court's "function is limited to a determination of whether: (1) there is a construction of the arbitration clause that would cover the grievance on its face and (2) whether any other provision of the contract specifically excludes it." *Mortimore*, 824 N.W.2d at 160 (quoting *Cirilli v. Country Ins. & Fin. Servs.*, 776 N.W.2d 272, 278 (Ct. App. Wis. 2009)). Further, Wisconsin courts agree with the Eighth Circuit that an arbitration agreement's

"incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court," *id.* (quoting *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (applying Missouri law)), and the Arbitration Agreement at issue in this case explicitly incorporates the AAA Rules. [*Beaulieu* Dkt., Doc. 2-6 at 58; Doc. 2-7 at 59].

Because the *Beaulieu* Defendants have not adequately challenged the delegation provision, the Court finds Judge's White's analysis in the May 1, 2024 order persuasive. Following Judge White's reasoning concerning the delegation provision, which expressly applies to issues of arbitrability such as validity and enforceability, the Court treats the delegation provision as valid and enforceable for the sake of this analysis.[8] Accepting the allegations in the Complaint as true and making all reasonable inferences in favor of BNSF, the Court cannot conclude at

---

[8]Although Judge White went on to consider the *Magin* Defendants' arguments regarding the validity of the arbitration agreement and found that they had failed to establish that Amtrak is acting as a governmental entity when it sells train tickets to passengers, [*Magin* Dkt., Doc. 116 at 7-10], the Court finds that it need not decide that issue here. Because BNSF still has not moved to compel arbitration in these consolidated cases, the issues of whether the delegation provision and arbitration agreement are valid and enforceable are not properly before the Court at this time. *See Seldin*, 879 F.3d at 272 ("Rule 12(b)(6) or Rule 56 motions are the appropriate means for parties seeking to compel arbitration.").

this early stage that BNSF has failed to state a plausible claim to relief against the *Beaulieu* Defendants. *See Iqbal*, 556 U.S. at 678; *Martin*, 752 F.3d at 727.

### 3. Waiver

The *Beaulieu* Defendants argue that BNSF has waived its right to enforce the Arbitration Agreement by participating in the state court actions. BNSF does not dispute that it knew of its existing right to arbitration, but it argues that it has not acted inconsistently with that right.

In determining "whether a party has 'intentional[ly] relinquish[ed] or abandon[ed]' the right to arbitration, . . . courts must determine whether it (1) knew of its 'existing right' and (2) acted 'inconsistently with' it. . . ." *In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th 610, 614 (8th Cir. 2024) (first three alterations in original) (first quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022); and then quoting *McCoy v. Walmart, Inc.*, 13 F.4th 702, 704 (8th Cir. 2021)). "A party acts inconsistently with its right to arbitrate if it 'substantially invokes the litigation machinery before asserting its arbitration right, . . . when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner.'" *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (alteration in original) (quoting *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007)).

28

As discussed above, the delegation provision expressly commits the issue of waiver to an arbitrator, and the *Beaulieu* Defendants have not directly or persuasively challenged the delegation provision. But even if the delegation provision is invalid or does not apply to the issue of waiver, the *Beaulieu* Defendants have not met their "heavy burden" of establishing that BNSF has waived arbitration. *See Nesslage v. York Sec., Inc.*, 823 F.2d 231, 234 (8th Cir. 1987) (first citing *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 146 (9th Cir. 1978); and then citing *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 728 (8th Cir. 1976)). Because the extent of BNSF's participation relative the underlying cases is not clear after reviewing the briefs, the Court cannot determine whether BNSF has acted inconsistently with its right to arbitration at this time. *See In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th at 614; *see also Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (explaining that "a district court is not 'obligated to wade through and search the entire record for some specific facts which might support the []moving party's claim'" (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990))). Therefore, the Court will deny the motions to dismiss as to the issue of waiver.

## V.    Conclusion

Because the Court finds that BNSF has alleged sufficient facts, accepted as true, to state a claim to relief that is plausible on its face, *see Iqbal*, 556 U.S. at 678, the Court will deny the *Beaulieu* Defendants' motions to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, [Docs. 45, 47, 67], are **DENIED**.

Dated this 14th day of March, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE